# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 05-1779

———————

United States of America,

        Appellee,

v.

Milo I. Worthing, Jr.,

        Appellant.

\*
\*
\*
\*
\* Appeal from the United States
\* District Court for the
\* Western District of Missouri
\*
\*
\*

———————

Submitted: November 15, 2005
Filed: January 17, 2006

———————

Before MURPHY, McMILLIAN and GRUENDER, Circuit Judges.

———————

McMILLIAN, Circuit Judge.

Milo I. Worthing, Jr., appeals from a final judgment entered in the District Court[1] for the Western District of Missouri, upon a jury verdict, finding him guilty of conspiracy (count 1) and multiple counts of interstate transportation of funds obtained by fraud (counts 2-14), wire fraud (counts 15-19), mail fraud (counts 20-21), and money laundering (counts 22-23), and sentencing him to 10 years imprisonment, 3 years supervised release, restitution of more than $5 million, and a special assessment of $2,300. For reversal, Worthing argues that the evidence was insufficient to support

———————

[1]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

the jury's verdict, the district court erred in denying his request for a cautionary tail instruction, and the sentence violated <u>United States v. Booker</u>, 543 U.S. 220 (2005). For the reasons discussed below, we affirm the judgment of the district court.

BACKGROUND

The government charged that Worthing and others conspired to induce individuals to invest in a high-yield investment scheme involving bank debenture and currency trading programs by promising exorbitant returns and making other false and fraudulent material representations. According to the government's theory of the case and the government's evidence, Worthing was the organizer and leader of the scheme, solicited funds and caused investors to send funds through interstate and foreign commerce, using the wires and the mail, laundered the proceeds through many bank accounts, and lulled investors into not demanding return of their funds by making false and fraudulent representations about the status of their accounts. The government charged that Worthing and others created several trading entities which generated promotional materials and other documents, used a portion of the funds to repay other investors, and lulled investors into believing that they were receiving a return on their investments and in forestalling detection by law enforcement authorities.

According to the government, Worthing represented that he used uncut gemstones to obtain a line of credit and then used those funds to trade bank debentures in multi-million dollar transactions, yielding millions on each transaction. According to Worthing, this was a tremendous investment opportunity, the investments could earn 50% in six months or as much as 100% per month in 10 months, the investments were international and were as "safe as certificates of deposit," the investments were guaranteed by the gemstones and securities and "Lloyd's of London," and the trading programs were regulated by the Federal Reserve, the World Bank, and the International Monetary Fund. Government investigators testified that high-yield investment program schemes have been the subject of multiple warnings and that the

features of this program are characteristic of this type of fraudulent scheme. The government investigators testified that high-yield investment program schemes are economic "nonsense" and that there are no legitimate bank debenture trading programs. Investors paid funds to sales representatives or promoters, who forwarded the funds to bank accounts, usually by wire, set up by Worthing or others at his direction, in other states and abroad (especially on the Isle of Man). Investors received written agreements in person or through the mail. Worthing contacted investors by telephone and by fax. According to the government, about 140 individuals "invested" $5.3 million, which Worthing did not invest in any trading program and instead spent on personal expenses.

In 2002 Worthing, Billie Brandenburg and others were indicted and charged with conspiracy, wire fraud, mail fraud, interstate transportation of funds obtained by fraud, and money laundering. The case was tried in 2004. Motions to dismiss and for judgment of acquittal were denied. Several defendants pleaded guilty before trial and testified pursuant to cooperation agreements. Worthing did not testify. The jury returned a verdict of guilty on all counts. The district court sentenced Worthing to a total of 10 years imprisonment, three years supervised release, a special assessment of $2,300, and restitution of more than $5 million. This appeal followed.

SUFFICIENCY OF THE EVIDENCE

Worthing first argues that the evidence was insufficient to convict him. He argues that the government charged that there was a single conspiracy and that the evidence showed instead that there were multiple conspiracies. Worthing argues that the evidence failed to show one overall agreement or his role or the roles of the other co-conspirators in the fraudulent scheme. Worthing also argues that the evidence failed to show that he caused funds to move across state lines or international borders (counts 2-14) or that the use of the mail (counts 20-21) or wires (counts 15-19) was in furtherance of the fraudulent scheme. Worthing also argues that the money

laundering counts (counts 22-23) must be dismissed because those counts specifically relied on the wire fraud counts as predicate offenses.

> In reviewing the sufficiency of the evidence . . . , the evidence is considered in the light most favorable to the government, evidentiary conflicts are resolved in its favor, and all reasonable inferences are drawn from the evidence in support of the jury's verdict. We will reverse only if no reasonable jury could have found the accused guilty beyond a reasonable doubt.

United States v. Mooney, 401 F.3d 940, 944 (8th Cir. 2005) (citations omitted); see United States v. Drews, 877 F.2d 10, 13 (8th Cir. 1989).

We have carefully reviewed the record and conclude that there was sufficient evidence to support the jury verdict finding him guilty. The evidence established the existence of a single conspiracy among Worthing and others to obtain funds from individuals by fraud, that Worthing knew of the fraudulent scheme and knowingly became a part of the fraudulent scheme, and that the other co-conspirators knew of the general nature and scope of the conspiracy and knowingly joined in the overall scheme. The evidence showed that Worthing was the organizer and leader of the fraudulent scheme and that he directed investors and others (including other co-conspirators) where to send or transfer funds from banks in Missouri to banks or accounts in other states in the United States (for example, Atlanta, Georgia) and the United Kingdom (London), and mailed and faxed documents and communications in furtherance of the conspiracy (for example, documenting investment agreements, promising payment, delaying payment, reassuring investors by falsely assuring them of the status of their investments, discouraging investors from complaining to authorities).

**CAUTIONARY TAIL INSTRUCTION**

Worthing next argues that the district court erred in refusing to instruct the jury that the testimony of an accomplice and testimony given pursuant to a plea agreement should be considered with greater care and caution than the testimony of an ordinary witness. Worthing argues that the government's evidence included the testimony of cooperating witnesses who had entered into plea agreements with the government in exchange for their testimony and who, at the time of trial, had yet to be sentenced. Worthing argues that under these circumstances a cautionary instruction about the credibility of cooperating witnesses was essential. We disagree.

> This court has held that "no 'absolute and mandatory duty is imposed upon the court to advise the jury by instruction that they should consider the testimony of an uncorroborated accomplice with caution.'" The district court's instructions drew the jurors' attention to the various factors impinging upon [the co-conspirator's] credibility as a witness, instructed them to give [the co-conspirator's] testimony such weight as they thought it deserved, and advised them that a witness' guilty plea could not be considered by them as evidence of [the defendant's] guilt.
>
> Furthermore, this court has held that a cautionary instruction is not required where additional evidence is presented that corroborates the accomplice's testimony. The corroborating evidence may be circumstantial and "need only tend to link the defendant with the crime and may be of little weight when taken alone."

United States v. Drews, 877 F.2d at 12-13 (citations omitted).

Although Worthing's proposed instruction was a correct statement of the applicable law on the credibility of cooperating witnesses and was based on the Eighth Circuit Model Jury Instructions, the proposed instruction included the following "cautionary tail" which is not part of the relevant Model Instruction (instruction

4.05a): "You should, however, consider the testimony of each with greater caution and care than that of an ordinary witness." The district court did not abuse its discretion in refusing to give the proposed cautionary tail instruction because the testimony of the cooperating witnesses was corroborated by the other cooperating witnesses, by the investors, and by documents. The instructions given adequately informed the jury about the factors to consider in assessing the credibility of witnesses who had entered into plea agreements with the government, including their hope to receive a reduced sentence for cooperation (instruction 14), advised them not to consider a guilty plea as evidence of Worthing's guilt (instruction 13), and instructed them to give the testimony of the cooperating witnesses such weight as they thought it deserved (instruction 12).

SENTENCING

Worthing finally argues that the district court imposed sentence in violation of United States v. Booker. Worthing argues that the district court unconstitutionally imposed sentence based on facts not reflected in the jury verdict or admitted by him. Worthing argues that the base offense level for the most serious offense found by the jury was 6, for a guideline sentencing range of 0-6 months, thus making 6 months the statutory maximum sentence. The presentence investigation report (PSR) recommended enhancements of 28 levels (18 levels for the amount of the loss (more than $2.5 million but less than $7 million), 4 levels for the number of victims (more than 50), 2 levels because a substantial part of the fraud was committed from outside the United States and involved sophisticated means, 4 levels for role in the offense (as organizer and leader of conduct that was otherwise extensive and involved five or more participants)), for a total offense level of 34, for a guideline sentencing range of 151-188 months (at criminal history category I). The government sought a sentence at the upper end of the applicable guideline sentencing range. Worthing objected at sentencing, clearly stating the Sixth Amendment basis for his objection and thus preserving the error for appellate review. He did not object to the amount of loss and

argued that, without the other enhancements, the appropriate guideline sentencing range would be 48-60 months.

The district court delayed sentencing pending the Supreme Court's decision in <u>Booker</u>. The district court sentenced Worthing to a total of ten years imprisonment.

On appeal Worthing argues that the district court improperly increased his sentence (by more than nine years) on the basis of facts not reflected in the jury verdict or admitted by him, such as his role in the offense and the scope of the fraudulent scheme. He particularly argues that the district court-- not the jury-- found that the offense conduct was outrageous.

We find no <u>Booker</u> error. The district court considered the guidelines as set forth in the PSR but expressly regarded the guidelines as advisory and not mandatory, consistent with the Supreme Court's directions in <u>Booker</u>. We have reviewed the district court's use of the term "outrageous" and believe that, read in context, the district court used the term to describe the offense conduct in general and did not make any finding of "outrageousness" (and thus did not rely on any such finding to enhance the offense level). The district court stated that it had intended to sentence at the bottom of the applicable guideline sentencing range but decided that 120 months was sufficient, in light of the evidence and the circumstances of the case. We note that the district court imposed a sentence well below the bottom of the applicable guideline sentencing range calculated on the basis of the enhancements recommended by the PSR (151 months). We hold that the sentence was not unreasonable in light of the sentencing factors set forth in 18 U.S.C. § 3553(a).

Accordingly, the judgment of the district court is affirmed.

---