# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2170

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Harlan Garcia, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 11, 2008
Filed: April 15, 2009

_____

Before COLLOTON and SHEPHERD, Circuit Judges, and GOLDBERG,[1] Judge.

_____

SHEPHERD, Circuit Judge.

Harlan Garcia was convicted by a jury of conspiracy to distribute 500 grams or more of methamphetamine, see 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846, and distribution of 50 grams or more of methamphetamine, see 21 U.S.C. § 841(a)(1), (b)(1)(B). Garcia appeals his convictions, contending that the district court erred in denying his motion for disclosure of portions of the Presentence Investigation Reports ("PSRs") of government witnesses, instructing the jury, and denying his motion for judgment of acquittal. We conclude that the district court's failure to review the PSRs

_____

[1]The Honorable Richard W. Goldberg, United States Court of International Trade, sitting by designation.

of government witnesses requires remand of Garcia's convictions to determine whether those PSRs contained any material exculpatory or impeachment information and, if they do, whether failure to provide it was harmless error. We otherwise affirm.

I.

"We state the facts in the light most favorable to the jury verdict." United States v. Garth, 540 F.3d 766, 769 (8th Cir. 2008). In 2002 and 2003, Harlan Garcia sold methamphetamine in what he describes as "[s]mall quantities, very small. Eightballs."[2] (Trial Tr. 190.) Garcia was the regular source of supply for a number of lesser dealers, including Michelle Lucero. Frequently, Garcia would supply Lucero with methamphetamine and then he and Lucero would use together. Lucero tended to buy an eighth of an ounce of methamphetamine from Garcia one to two times a week.

In 2003, Garcia also provided methamphetamine to Colleen Loris, who later became his girlfriend.[3] At first, Loris did not actively participate in Garcia's methamphetamine sales. However, Loris observed Garcia selling methamphetamine in quantities of up to one ounce. Loris also assisted Garcia in small ways and became familiar with Garcia's regular customers.

In the middle or end of 2003, Loris took over Garcia's methamphetamine sales. Loris stated, "I wouldn't say he wasn't capable [of running the organization]; he wasn't running it and I was." (Id. at 163.) Loris believed that Garcia had insufficient

---

[2]"An '8-ball' refers to one-eighth of an ounce, or 3.5 grams, of methamphetamine." United States v. Becker, 534 F.3d 952, 954 n.4 (8th Cir. 2008) (quotation omitted).

[3]Loris and Garcia were married on July 12, 2006; at that time, Loris was in custody following her arrest for conspiracy to distribute methamphetamine in June 2006.

funds to run the business because he had lost some money in Las Vegas. Essentially, Garcia and Loris underwent a role reversal such that Loris was actually dealing the methamphetamine while Garcia was present. Loris would share methamphetamine with Garcia. Lucero indicated that Garcia "was no longer able to supply what was needed; he wasn't answering phone calls; [he was] pretty much out of the business." (Id. at 20.) At that time, Loris was selling to Lucero in quantities of up to an ounce or more on a frequent basis, as often as every other day.

In the spring of 2004, Zacchari Muncy, who had friends who were purchasing methamphetamine from Loris, began purchasing directly from Loris. Initially, Muncy purchased quarter-ounces or half-ounces of methamphetamine. It was not unusual for Muncy to use methamphetamine with Loris or for Garcia to join them. Muncy described Garcia as Loris's "enforcer" or "intimidator." Whether Garcia was around depended on the status of his relationship with Loris.

In December 2004, Loris asked Muncy to travel from Denver, Colorado, to Rapid City, South Dakota, to deliver a pound of methamphetamine and collect the money. Muncy knew the purchasers as "Dave" and "Vicki." When Muncy returned from this first trip, he gave the money to Loris with Garcia present. In the summer of 2005, Muncy made an additional trip to South Dakota on Loris's behalf; this time Garcia accompanied Muncy. Muncy observed Dave and Vicki give Garcia an envelope of money. Muncy also saw Garcia give a plastic bag containing methamphetamine to Dave. After returning from at least one of these trips, Muncy recalls Garcia counting out the money after Muncy delivered it to Loris.

Muncy also delivered methamphetamine for Loris to Jeff McMahan in Rapid City. In the course of his contact with McMahan, Muncy became aware that

McMahan was angry because the drugs he had received were "wet."[4] Muncy recalls seeing a text message on McMahan's phone, which he understood to have come from Garcia, blaming Muncy for the fact that the methamphetamine had been watered down. When asked why he believed the text message actually came from Garcia and that Loris had not simply used Garcia's phone to send it, Muncy answered that "[Garcia] would be the one that would do that. He would usually be the one that was calling to cover the tracks, you know, to intimidate me, or to get me to say something, like, I had watered it down, or the intimidation process, basically." (Id. at 107.)

McMahan confirmed that he received text messages that he believed came from Garcia. Although McMahan did not recall the specific text message concerning wet methamphetamine about which Muncy testified, McMahan did discuss the wet methamphetamine with Garcia, and Garcia blamed Muncy. The conversation took place in late September or early October 2005, when McMahan met with Loris and Garcia in Edgemont, South Dakota. This meeting was McMahan's first face-to-face encounter with Loris or Garcia. At the meeting, McMahan agreed to loan Loris and Garcia $20,000 in cash. In exchange, Loris agreed to discount the price of the drugs she was selling to McMahan. Up to that point, McMahan had been paying $12,000 for a pound of methamphetamine. Loris suggested that she would cut the price to $10,000 per pound, and Garcia interjected that the price was too low. McMahan suggested that he pay $11,000 per pound. After the deal was reached, Garcia counted the cash from McMahan.

---

[4] According to the government's brief, "[s]ince methamphetamine is a crystalline substance sold by weight, adding water or other liquid to it will artificially increase the weight. By the time the substance is used, the water has often been evaporated, leaving a lesser weight than the purchaser expected." (Appellee's Br. 5 n.2.)

On October 18, 2006, a federal grand jury indicted Garcia in a four-count indictment.[5] Count I alleged conspiracy to distribute 500 grams or more of a mixture containing a detectable amount of methamphetamine pursuant to 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. Counts II and IV both alleged distribution of 50 grams or more of a mixture containing a detectable amount of methamphetamine pursuant to 21 U.S.C. § 841(a)(1), (b)(1)(B). Count II involved distribution in Rapid City, South Dakota, in February 2005, while count IV addressed distribution in Rapid City in June and July 2005. Lucero, Muncy, Loris, and McMahan were all also prosecuted in federal court in the District of South Dakota for their offenses.

Garcia proceeded to trial. The government's case consisted of the testimony of cooperating witnesses Lucero, Muncy, and McMahan. During the course of trial, count II was dismissed on the motion of the government. The case was submitted to the jury on the remaining counts I and IV. The jury returned a guilty verdict on both counts. Garcia moved for a judgment of acquittal or a new trial, arguing that the government's evidence was insufficient to sustain a conviction on either count. The district court denied his motion. The district court sentenced Garcia to 135 months of imprisonment.

## II.

### A.

Garcia contends that the district court erred in failing to conduct *in camera* review of the PSRs of cooperating government witnesses, Muncy and McMahan. Prior to trial, Garcia filed a Motion for Access to the PSRs of Muncy and McMahan,

---

[5]Count III only named Lucero and, thus, is not at issue in this appeal.

citing Brady v. Maryland, 373 U.S. 83 (1963), [6] and Giglio v. United States, 405 U.S. 150 (1972).[7]  The government responded:

> [M]ost of these reports are not discoverable to the defense. . . .  The portion dealing with each defendant's criminal history is . . . potentially discoverable as impeachment evidence.  The United States would, therefore, request that the Court conduct an *in camera* review of the pre-sentence reports and order disclosure of those portions, if any, that the Court believes is discoverable.

(Gov't Mem. in Opp'n to Def.'s Mot. for Access to Sentencing & Related Documents 1-2.)  The district court, citing United States v. Shyres, 898 F.2d 647 (8th Cir. 1990), concluded that "the government is under no obligation to produce the presentence reports sought by defendant."  The record does not indicate that the district court conducted *in camera* review of the PSRs prior to issuing its ruling.  We review the district court's ruling for abuse of discretion.  United States v. DeVore, 839 F.2d 1330, 1332 (8th Cir. 1988).

In Shyres, the "appellants moved for production of [a government witness's] statements to his probation officer contained in his presentence report" for the purpose

---

[6]"Under Brady, the government must disclose any evidence both 'favorable to an accused' and '*material* either to guilt or to punishment.'" United States v. Whitehill, 532 F.3d 746, 753 (8th Cir.), cert. denied, 129 S. Ct. 610 (2008) (quoting Brady, 373 U.S. at 87) (emphasis added).

[7]"Under Giglio v. United States, 405 U.S. 150, 153-55 (1972), the government must disclose matters that affect the credibility of prosecution witnesses." United States v. Morton, 412 F.3d 901, 906 (8th Cir. 2005).  "[F]or example, a defendant is entitled to know of a promise to drop charges against a key witness if that witness testifies for the government." Id.  However, the nondisclosure of Giglio evidence only justifies a retrial if the withheld information is deemed material. United States v. Spinelli, 551 F.3d 159, 164 (2d Cir. 2008).

of "impeaching his credibility . . . ," and "the district court[] fail[ed] to order production of the report." 989 F.2d at 656. Recognizing that PSRs "are not public and should not be disclosed to third persons absent a demonstration that disclosure is required to meet the ends of justice," the court "made an *in camera* review of [the witness's] presentence report" and determined that "nondisclosure of the report did not violate any of appellants' rights." Id. (quotation omitted).

Prior to Shyres, this court decided Devore. There, the magistrate judge denied the defendant's motion to discover the PSR of McPherson, an individual with whom the defendant had originally been indicted and who had pled guilty to the robbery charge at issue. Devore, 839 F.2d at 1332. "[T]he district court reviewed the [PSR] *in camera* and ordered that DeVore could discover that portion of the report containing McPherson's version of the robbery." Id. On appeal, this court reviewed the PSR at issue and found that "the district court did not fail to turn over any exculpatory evidence or impeachment material." Id. The Devore Court explained that "[t]he district court's order stated that it had reviewed the [PSR] *in camera* and would reveal to DeVore that portion of it that 'in fairness' should be made available to him. More was not required." Id. at 1333.

Shyres and Devore demonstrate that where, as here, the defendant has sought access to a coconspirator's PSR, the government has recognized the possibility that the PSR contains Brady/Giglio information and requested *in camera* review, and the district court fails to carry out such review, the district court abuses its discretion. Thus, the district court's failure to conduct *in camera* review of Muncy's and McMahan's PSRs was an abuse of discretion.

We therefore remand Garcia's convictions but do not reverse them. See United States v. Spinelli, 551 F.3d 159, 164 (2d Cir. 2008) ("Under Brady and Giglio, the government's failure to disclose favorable information will result in an order of retrial if the undisclosed information is 'material,' within the exacting standard of materiality

established by the governing case law."). On remand, we instruct the district court to review Muncy's and McMahan's PSRs *in camera* and determine whether they contain any Brady/Giglio information that satisfies the materiality standard.

> [U]ndisclosed [Brady/Giglio] information is deemed material so as to justify a retrial only "if there is a reasonable probability that, had [it] been disclosed to the defense, the result of the proceeding would have been different." A reasonable probability of a different result is shown when the government's failure to disclose "undermines confidence in the outcome of the trial."

Id. at 164-65 (quoting Kyles v. Whitley, 514 U.S. 419, 433-34 (1995)); see United States v. Quintanilla, 25 F.3d 694, 698 (8th Cir. 1994). Accordingly, the district court should only vacate Garcia's convictions and order a new trial if it concludes that undisclosed Brady/Giglio information qualifies as material. See Kyles, 514 U.S. at 421-22 ("Because the net effect of the evidence withheld by the State in this case raises a reasonable probability that its disclosure would have produced a different result, [the defendant] is entitled to a new trial."). The PSRs, filed under seal if necessary, should be made a part of the record to allow for review of the district court's conclusions.

### B.

Garcia next alleges that the district court committed several errors in instructing the jury. We address each in turn.

### 1.

First, Garcia contends the district court plainly erred by misreading jury instruction 18 addressing how jurors are to view sentence reductions received by cooperating witnesses in assessing their credibility. As this claim was not "preserved

for review by objection below, . . . we apply a plain error standard . . . ." <u>JCB, Inc. v. Union Planters Bank, NA</u>, 539 F.3d 862, 878 (8th Cir. 2008). Under plain error review, the defendant "must show that the court committed an error that was plain, that affected his substantial rights, and that seriously affects the fairness, integrity or public reputation of judicial proceedings." <u>United States v. Davis</u>, 538 F.3d 914, 917 (8th Cir. 2008) (quotation omitted).

The trial transcript provides that the district court stated:

> You have heard evidence that various witnesses have received a reduced sentence on a criminal charge in return for cooperation with the government in this case. You may give the testimony of that witness such weight as you think it deserves. Whether or not testimony of a witness may have been influenced in hope of receiving a reduced sentence is *not* for you to decide. *I will read that last sentence again.* Whether or not testimony of a witness has been influenced in hope of receiving a reduced sentence *is* for you to decide.

(Trial Tr. 221 (emphasis added).) Garcia simply cannot carry his burden, on plain error review, where the error is a misread jury instruction and the district court immediately re-read the instruction in its correct form. <u>Cf.</u> <u>Amos v. United States</u>, 496 F.2d 1269, 1274 (8th Cir. 1974) (harmless error where the district court misread a jury instruction, stating that *the defendant* contended that several documents were false and fraudulent when instruction provided that *the government* contended that they were false and fraudulent, because "[a]ny question raised by this minor misstatement was clarified by the balance of the instructions").

2.

Second, Garcia asserts that the district court erred in refusing to give his proposed cautionary instruction about the credibility of accomplices.[8] We review the district court's decision for abuse of discretion. United States v. Worthing, 434 F.3d 1046, 1050 (8th Cir. 2006). "This court has held that no absolute and mandatory duty is imposed upon the court to advise the jury by instruction that they should consider the testimony of an uncorroborated accomplice with caution." Id. at 1049-50 (quotations omitted). The Worthing Court recognized that the defendant's proposed cautionary instruction addressing accomplice credibility was a correct statement of the law but found no abuse of discretion in the district court's failure to give the instruction where: (1) "the testimony of the cooperating witnesses was corroborated by the other cooperating witnesses, by the investors [defrauded by the defendant], and by documents" and (2) "[t]he instructions given adequately informed the jury about the factors to consider in assessing the credibility of witnesses who had entered into plea agreements with the government, including their hope to receive a reduced sentence for cooperation . . . , advised them not to consider a guilty plea as evidence of [the defendant's] guilt . . . , and instructed them to give the testimony of the cooperating witnesses such weight as they thought it deserved . . . ." Id. at 1050.

---

[8]Proposed Jury Instruction No. 15 provides:

The testimony of an alleged accomplice, someone who said he or she participated in the commission of a crime, must be examined and weighed by the jury with greater care than the testimony of a witness who did not participate in the commission of that crime.

The fact that an alleged accomplice has entered a plea of guilty to the offense charged is not evidence of the guilt of any other person including the defendant.

The jury must determine whether the testimony of an accomplice has been affected by self-interest, or by an agreement he or she may have with the government, or by his own or her own interest in the outcome of this case, or by prejudice against the defendant.

-10-

Similarly, here the accomplice testimony in this case was corroborated by the testimony of other cooperating witnesses and, to an extent, by Garcia. Garcia admitted that (1) he sold methamphetamine, (2) Loris "took over" his methamphetamine distribution business, and (3) after Loris began dealing, he continued to use methamphetamine she provided to him. Furthermore, the district court sufficiently instructed the jury as to the relevant considerations in assessing the credibility of cooperating witnesses. In addition to informing the jury as to the factors to consider in determining a witness's credibility in general, the district court instructed the jury as to the credibility of cooperating witnesses specifically by stating that: the testimony of a witness who has entered into a plea agreement with the government should be given the weight the juror believes appropriate and whether the juror believes that the testimony was influenced by the agreement is a matter for him or her to decide; witnesses' guilty pleas could be considered only to the extent of determining how much, if at all, to rely upon the testimony and were not evidence of Garcia's guilt; and whether the fact that a witness had received a sentence reduction for cooperating with the government in this case influenced the testimony of that witness is the juror's decision. (Trial Tr. 220-21.) Therefore, the district court's refusal to give the cautionary instruction with regard to the credibility of accomplices was not an abuse of discretion.

Third, Garcia argues that the district court abused its discretion in failing to give Garcia's proposed addict-informer instruction.[9] "This circuit has not adopted the rule that an addict-informer instruction must be given if requested. The need for such an instruction depends on the circumstances of each case." United States v. Gladney, 474 F.3d 1027, 1032 (8th Cir. 2007). The Gladney Court stated that:

> The presence of any of the following factors may make an addict-informer instruction unnecessary: (1) a dispute as to whether the informant is actually an addict, (2) cross-examination concerning the informant's addiction, (3) an instruction alerting the jury to view the informant's testimony with care, and (4) corroboration of the informant's testimony.

Id. Here, all four factors are present. First, Garcia concedes that "each of the three cooperating prosecution witnesses admitted to prolonged methamphetamine use at the time of their conspiratorial crimes about which they were testifying," (Appellant's Br. 31) such that factors one and two are present. Second, factor three is met because each of the "addict" witnesses were also "informant" witnesses and, as the preceding section established, the district court instructed the jury as to how to weigh the testimony of cooperating witnesses. Finally, there was corroboration for the addict-informers' testimony, including from Garcia himself, as discussed in the preceding

---

[9]Proposed Instruction No. 14 provides:

> The testimony of a drug or alcohol abuser must be examined and weighed by the jury with . . . greater care than the testimony of a witness who does not abuse drugs or alcohol.
> The jury must determine whether the testimony of the drug or alcohol abuser has been affected by drug or alcohol use or the need for drugs or alcohol.

section, fulfilling factor four. Thus, under <u>Gladney</u>, the district court did not abuse its discretion by declining to give the addict instruction.

4.

Finally, Garcia alleges prejudicial error in the district court's supplemental instruction in response to the jury's question concerning potential sentence reductions for government witnesses. Because Garcia did not object to the supplemental instruction below, we review for plain error. <u>See</u> <u>JCB, Inc.</u>, 539 F.3d at 878; <u>Davis</u>, 538 F.3d at 917.

At sentencing, Lucero, Muncy, and McMahan each received sentence reductions on government motions pursuant to United States Sentencing Commission, Guidelines Manual, §5K1.1.[10] When questioned whether she could receive any

---

[10]USSG §5K1.1 provides:

Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

(a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:

(1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
(3) the nature and extent of the defendant's assistance;
(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;
(5) the timeliness of the defendant's assistance.

-13-

potential further reduction in her sentence in relation to her testimony at Garcia's trial, Lucero testified that she would not receive any such reduction. Similarly, Muncy responded, "nothing," when asked "what are you getting for being here today?" McMahan was questioned about the possibility of a Federal Rule of Criminal Procedure Rule 35 motion for sentence reduction,[11] and he stated that he might receive a further reduction pursuant to a Rule 35 motion in addition to his previous USSG §5K1.1 reduction.

Following a period of deliberation, the jury sent a note to the district court inquiring: "Do any of the witnesses get a further reduction in their sentences for testifying? With the present understanding that [there is] 'no guarantee' as in the original reductions [they received for their cooperation relating to Garcia's case] other

---

[11]Rule 35(b) provides:

**(b) Reducing a Sentence for Substantial Assistance.**

**(1) In General.** Upon the government's motion made within one year of sentencing, the court may reduce a sentence if the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person.
**(2) Later Motion.** Upon the government's motion made more than one year after sentencing, the court may reduce a sentence if the defendant's substantial assistance involved:

**(A)** information not known to the defendant until one year or more after sentencing;
**(B)** information provided by the defendant to the government within one year of sentencing, but which did not become useful to the government until more than one year after sentencing; or
**(C)** information the usefulness of which could not reasonably have been anticipated by the defendant until more than one year after sentencing and which was promptly provided to the government after its usefulness was reasonably apparent to the defendant.

than Rule 35 for Jeff McMahan." (Opening Statements, Preliminary Instructions, Jury Questions Tr. 21.) Both the government and defense counsel requested that the district court instruct the jury to rely on their memories as to the testimony with regard to potential sentence reductions, but the district court was concerned that such a response would not be helpful to the jury. The district court questioned the government about the possibility of a sentence reduction for Muncy or Lucero and determined that, in accordance with their testimony, neither would receive a further sentence reduction in exchange for their testimony at Garcia's trial.[12] Accordingly,

---

[12]The following exchange took place:

THE COURT: Is it possible under the guidelines to get a further reduction?

GOVERNMENT: It is a legal possibility, Your Honor. In theory I could file a Rule 35. [However,] I went through with both Mr. Muncy and Ms. Lucero that they would not receive any further reduction for their testimony in trial. That was part of their original deal.

THE COURT: But there is a possibility of a Rule 35?"

GOVERNMENT: For other reasons.

THE COURT: For other reasons. Such as?

GOVERNMENT: Were they to learn something in prison where they could cooperate with authorities on something that we never dealt with before. In other words, it would have to be a new circumstance in each of their cases.

THE COURT: Within one year.

GOVERNMENT: Within one year. Or there is a proviso of the rule if it is something that happens that is not within the year, that

the district court proposed the following supplemental instruction: "You are instructed that no witness (other than possibly Jeff McMahan under Rule 35) will receive a further reduction in their sentences for testifying in this trial." (Id. at 28.) The district court asked both the government and defense counsel if they had any objection, and both agreed to the supplemental instruction. The jury was so instructed.

This court discussed supplemental instructions in United States v. Morrison, 332 F.3d 530 (8th Cir. 2003), stating that "[w]hen a jury explicitly requests supplemental instruction, a trial court must take great care to [e]nsure that any supplemental instructions are accurate, clear, neutral, and non-prejudicial. In addition, the trial judge should answer with concrete accuracy, and within the specific limits of the question presented." Id. at 532 (quotation and citation omitted). In this case, only McMahan had a written agreement with the United States that he would receive a sentence reduction in return for his testimony. The two witnesses at issue, Muncy and Lucero, testified that there was no possibility of a further reduction in sentence based upon their testimony at trial, and the government represented that this was accurate. Garcia concedes as much; however, he argues that it was not legally accurate because there was still a possibility that Muncy and Lucero could receive reductions in their sentence. Although a Rule 35 Motion was still a possibility for Muncy and Lucero based on unrelated matters, the jury's question pertained to a sentence reduction for testimony given at Garcia's trial. Therefore, as Morrison instructs, the district court answered the jury's question "with concrete accuracy . . . and within the specific limits

_____

> could not have been known within the year, so again, if we looked at a hypothetical cooperation within the prison, something that happened after a year and they were cooperative on, they could still receive a Rule 35 reduction even outside a year.

(Opening Statements, Preliminary Instructions, Jury Questions Tr. 23-24.)

of the question presented." Id.  Accordingly, Garcia has failed to demonstrate that the supplemental instruction was a plain error.

C.

Garcia's final challenge is to the district court's denial of his motion for judgment of acquittal, arguing that the evidence is insufficient to support either of his convictions.  We apply the same standard of review to the district court's ruling on a defendant's motion for judgment of acquittal as we do to challenges to the sufficiency of the evidence to support a guilty verdict.  United States v. Reddest, 512 F.3d 1067, 1070 (8th Cir. 2008).  "In reviewing the sufficiency of the evidence, we resolve all evidentiary conflicts in the Government's favor and accept all reasonable inferences from the evidence that support the jury's verdict.  Further, we will overturn the verdict only if no reasonable jury could have found [Garcia] guilty."  United States v. Price, 542 F.3d 617, 620 (8th Cir. 2008) (quotation and citation omitted).

Garcia admitted that he sold methamphetamine in 2002 and 2003. The evidence at trial further demonstrated that Loris eventually took over Garcia's methamphetamine-distributing organization.  The evidence further showed that, even after Loris took over, Garcia was often present when Loris sold methamphetamine, served as Loris's enforcer, made at least one drug delivery, was involved in negotiating the price of drug sales, and handled money from drug sales.  Thus, the evidence is not such that no reasonable jury could have found Garcia guilty of participating in a methamphetamine conspiracy and distributing methamphetamine.

## III.

We remand Garcia's convictions for determinations as to whether the PSRs of Muncy and McMahan contain material <u>Brady</u> or <u>Giglio</u> information and the appropriate relief, if any. As to all other issues raised in this appeal, we affirm the judgment of the district court.

———————————————