# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1882

_____

United States of America,      *
     *
         Appellee,      *
     *    Appeal from the United States
       v.      *    District Court for the
     *    District of Minnesota.
Marco Jeanpierre,      *
     *
         Appellant.      *

_____

Submitted: October 19, 2010
Filed: April 12, 2011

_____

Before SMITH, COLLOTON, and SHEPHERD, Circuit Judges.

_____

SMITH, Circuit Judge.

A jury convicted Marco Jeanpierre of one count of conspiracy to distribute 50 grams or more of crack cocaine, nine counts of distribution of crack cocaine, and one count of being a felon in possession of a firearm. Prior to trial, the government filed an information pursuant to 21 U.S.C. § 851 advising Jeanpierre that it intended to seek an enhanced sentence from the statutory mandatory minimum term of ten years to 20 years based on his prior state conviction for a felony drug offense. At sentencing, the district court[1] sentenced Jeanpierre to the enhanced statutory mandatory minimum

_____

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

sentence of 20 years' imprisonment. On appeal, Jeanpierre asserts that he is entitled to a new trial because the government repeatedly failed to provide discovery in a timely fashion in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). He also asserts that the government abused its discretion in filing the information pursuant to § 851 or, in the alternative, exceeded its authority and the intent of the statute because Congress did not intend the sentencing enhancements to apply to a low-to-mid-level retailer or "street-level" offender. We affirm.

## I. *Background*

Jeanpierre was charged in a superseding indictment with one count of conspiracy to distribute 50 grams or more of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; numerous counts of distribution of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2; and two counts of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Prior to trial, the government filed an information notifying Jeanpierre that, pursuant to § 851, it intended to rely on Jeanpierre's May 5, 1998, Hennepin County, Minnesota conviction for a third-degree felony drug offense for the purpose of enhancing his sentence from the statutory mandatory minimum of ten years to 20 years.

## A. *First Motion To Dismiss*

During trial, Jeanpierre made two motions to dismiss. The first motion to dismiss stemmed from Jeanpierre's receipt of a wiretap summary prepared by Minneapolis Police Officer John Biederman. The wiretap summary listed the pertinent calls intercepted over the duration of the wiretap investigation. The wiretap summary was a compilation of the wiretap monitoring that Officer Biederman and other officers had conducted. Officer Biederman's wiretap summary contained references to traffic stops. These stops had nothing to do with the ongoing wiretap investigation. Officers not related to the narcotics investigation conducted these stops for unrelated, routine traffic offenses.

During the pretrial phase, Jeanpierre lodged a motion to dismiss alleging that the government failed to provide Computer Assisted Police Record System (CAPRS) reports[2] to him regarding the traffic stops mentioned in Officer Biederman's wiretap summary. In response, the government stated that "all the reports that we have relative to this investigation we have disclosed." Indeed, Jeanpierre had received a copy of all of the intercepted calls in which he participated, had access to all intercepted calls involving his codefendants, and reviewed, via his counsel, the government's file. The court denied the motion to dismiss.

On the third day of trial, anticipating that Jeanpierre would renew his motion to dismiss, the government raised the issue of the CAPRS reports related to the wiretap summary. According to the government, it pulled every report referenced in the wiretap summary and provided those reports to Jeanpierre. The government also prepared a summary of incidents detailed in the reports, indicating whether the traffic stops were random or were directed by officers in the case. Jeanpierre then renewed his motion to dismiss, arguing that the government should have disclosed the CAPRS reports referenced in the wiretap summary because they constituted Jencks Act[3] material. The district court asked Jeanpierre's counsel to point to specific reports that contained Jencks Act material. Counsel replied, "Again, I have not read all of these documents. I tried to scan them while I was, here I am listening in one ear to the

---

[2]The court asked Jeanpierre's counsel to explain what a CAPRS report was, to which counsel replied, "I believe it's the police report that in their training manual, any time a significant event happens with a Minneapolis police officer, a case number needs to be created, or this CAPRS number, and there's a protocol for describing who, what, where, why, along . . . ." Counsel clarified for the court that a police officer must make a CAPRS report any time that he or she makes a stop or arrest.

[3]"The Jencks Act requires the district court, on the motion of a defendant, to produce any 'statements' of a government witness that relate to the subject matter of the witness's testimony, after the witness has testified on direct examination." *United States v. New*, 491 F.3d 369, 376 (8th Cir. 2007).

testimony, trying to review this and go through it like we're going through it now." The court then advised counsel that if he found something in the documents that constituted Jencks Act material, he should advise the court. Additionally, the court stated, "I think we're in agreement this is not Jencks. This name Detrick Giles, telephone, this is not a prior statement given by a witness, so that's not Jencks, but if there's any Jencks in here, let me know." And, the court noted that any CAPRS report relating to Jeanpierre would constitute disclosable material under Federal Rule of Criminal Procedure 16.

After the court afforded Jeanpierre's counsel time to review the reports, the trial resumed. The court then asked counsel if he had anything that he wanted the court to review, to which counsel replied, "No, Your Honor, other than on behalf of Mr. Jeanpierre, we would request an adjournment to further prepare for these proceedings." In response, the government argued that most of the reports were merely traffic stops unrelated to the wiretap initiated for narcotics interdiction. According to the government, they were included simply to provide complete information and did not implicate the Jencks Act. The district court denied counsel's request for an adjournment. Subsequently, Jeanpierre's counsel never conducted any inquiry of any witnesses based on the CAPRS reports.

B. *Second Motion To Dismiss*

Jeanpierre's second motion to dismiss related to two fingerprint reports that the government provided to him. The reports concerned two issues: (1) fingerprint analysis for Jeanpierre's prior state felony conviction and (2) fingerprint analysis of two firearms that did not reveal any fingerprint detail. Prior to trial, Jeanpierre agreed to stipulate that he was the person convicted of the prior qualifying predicate felony offense. On the eve of trial, Jeanpierre changed his mind, deciding not to stipulate. He conceded that the government had relied on his agreement to stipulate. The government then provided a copy of the fingerprint report to Jeanpierre.

-4-

Jeanpierre's counsel represented to the district court that the government provided the fingerprint reports "not before trial but only during trial." Counsel argued that he needed the reports to assist in examining witnesses. In response, the government stated:

> There's reference that counsel didn't get fingerprints until this trial started. That's because he indicated he was going to stipulate. And since he was not going to stipulate, then we decided we needed to provide that information for him. So that's what those fingerprint references were for.

Jeanpierre filed a written motion to dismiss, alleging that the government had "committed several discovery violations." According to Jeanpierre, the government had "repeatedly failed to disclose relevant, exculpatory and impeachment evidence" and had provided him with "a fingerprint report after the Government's witness had testified." In response, the government informed the court that it had provided Jeanpierre with the fingerprint report "prior to any testimony being offered at trial." According to the government, although it did not provide the fingerprint report to Jeanpierre before trial began, "he had possession of the report prior to any testimony on the matter, and [he] used the findings of the fingerprint analyst in cross-examination of the government's first witness. [Jeanpierre] also used these findings in his closing argument to the jury." The government contended that no *Brady* violation occurred.

At trial, the jury found Jeanpierre guilty on one count of conspiracy to distribute 50 grams or more of crack cocaine, nine counts of distribution of crack cocaine, and one count of felon in possession of a firearm. The jury acquitted him on one count of distribution of powder cocaine and one count of felon in possession of a firearm.

The district court denied Jeanpierre's motion to dismiss, stating:

> The [late disclosure of fingerprint] data relate[s] to Count 65 of the superseding indictment. As the jury returned a verdict of not guilty on that count, the motion is moot with respect to that count. To the extent the motion relates to Count 66, on which Defendant was found guilty, it is without merit.

## C. *Motion for New Trial*

After trial, the government informed Jeanpierre that it had become aware of an adverse credibility ruling regarding the testimony of Sergeant Grant Snyder, albeit in an unrelated case. Prior to sentencing, Jeanpierre filed a motion for new trial, renewing his argument that the government failed to timely provide the CAPRS reports and fingerprint reports. He also moved for a new trial based on the newly discovered credibility ruling regarding Sergeant Snyder. The district court denied the motion for new trial, concluding that the magistrate judge's statement in the unrelated case regarding Sergeant Snyder's credibility would be inadmissible hearsay. The district court also noted that the magistrate judge "did not permit the government to offer evidence that would have rebutted the magistrate judge's finding because it wasn't needed for the probable case finding that was at issue in that case."

## D. *Applicability of 21 U.S.C. § 851*

At sentencing, the district court addressed the applicability of the § 851 enhancement. Jeanpierre had filed a response to the government's notice of intent to pursue an enhanced sentence, arguing that he did "not challenge or deny that his prior qualifying conviction" applies in the case; instead, he asserted that the enhancement did not apply because he was not a "major" manufacturer or distributor of crack cocaine. According to Jeanpierre, the government abused its discretion in filing the information. The district court rejected this argument, holding that the government did not abuse its discretion.

Ultimately, the district court sentenced Jeanpierre to 240 months' imprisonment, followed by 10 years of supervised release.

## II. *Discussion*

On appeal, Jeanpierre argues that this court should reverse his convictions and remand for a new trial because the government's repeated failures to provide discovery in a timely fashion, cumulatively, violated his Fifth Amendment right to due process of law and his Sixth Amendment rights to a fair trial and effective assistance of counsel. In the alternative, he asks this court to find that, under the circumstances of his case, the § 851 sentencing enhancement does not apply.

## A. *Discovery*

Jeanpierre asserts that the government violated its obligation under *Brady* to timely disclose exculpatory evidence when it (1) belatedly provided, during the course of trial, CAPRS reports regarding the surveillance and traffic stops of Jeanpierre and various codefendants and unindicted coconspirators; (2) belatedly provided, during the course of trial, two fingerprint reports; and (3) informed him, long after trial, that a magistrate judge in an unrelated case found Sergeant Snyder's testimony not credible.

> The government has an obligation to disclose evidence that is favorable to the accused and material to either guilt or punishment, and this duty extends to impeachment evidence. To show a *Brady* violation, the defendant must establish that (1) the evidence was favorable to the defendant, (2) the evidence was material to guilt, and (3) the government suppressed evidence.

*United States v. Ladoucer*, 573 F.3d 628, 636 (8th Cir. 2009) (quotations, alteration, and citations omitted). "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* (quotation, alteration, and citation omitted); *see also*

*United States v. Pulliam*, 566 F.3d 784, 787 (8th Cir. 2009) ("The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.") (quotation, alteration, and citation omitted).

### 1. *CAPRS Reports*

Assuming, without deciding, that the CAPRS Reports were favorable to Jeanpierre and material to his guilt, Jeanpierre has failed to prove that the government suppressed the CAPRS reports. *See Ladoucer*, 573 F.3d at 636. "Although a defendant's *Brady* rights are violated if he discovers information after trial which had been known to the prosecution but unknown to the defense, the same is not true," where, as here, "the evidence is discovered during trial." *United States v. Almendares*, 397 F.3d 653, 664 (8th Cir. 2005) (quotation and citations omitted). We have previously held that "*Brady* does not require pretrial disclosure, and due process is satisfied if the information is furnished before it is too late for the defendant to use it at trial." *Id*. Here, Jeanpierre was given the opportunity to call any additional witnesses based on the content of the reports without objection from the government. He elected not to conduct any further inquiry of any witness based on this material. Thus, due process is satisfied. *See Almendares*, 397 F.3d at 664.

### 2. *Fingerprint Reports*

Jeanpierre's argument that the government violated *Brady* by belatedly providing the fingerprint reports also fails. *See Almendares*, 397 F.3d at 664. First, both reports were provided to Jeanpierre during trial. With regard to the fingerprint report related to Jeanpierre's prior conviction, Jeanpierre himself contributed to its tardiness. The government provided Jeanpierre with the report *after* Jeanpierre, on the eve of trial, reneged on his agreement to stipulate to the prior conviction. Second, with regard to the fingerprint report of the two firearms, although the government did not provide the report prior to trial, it did provide the report prior to any testimony being

offered at trial. Following the disclosure, Jeanpierre used the report in his cross examination of Agent Calvin Meyer and in his closing argument, pointing out to the jury that his fingerprints were not on the AB-10 9mm handgun. Accordingly, due process is satisfied. *See Almendares*, 397 F.3d at 664.

### 3. *Credibility of Sergeant Snyder*

Finally, Jeanpierre asserts that the government violated *Brady* by advising him, long after trial, that a magistrate judge, in a probable cause hearing in an unrelated case with a different defendant, determined that Sergeant Snyder was not credible. According to Jeanpierre, not being aware of this prior finding prevented his counsel from effectively cross-examining Sergeant Snyder to impeach his testimony.

> "Under *Giglio v. United States*, 405 U.S. 150, 153–55, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972), the government must disclose matters that affect the credibility of prosecution witnesses." *United States v. Morton*, 412 F.3d 901, 906 (8th Cir. 2005). "[F]or example, a defendant is entitled to know of a promise to drop charges against a key witness if that witness testifies for the government." *Id*. However, the nondisclosure of *Giglio* evidence only justifies a retrial if the withheld information is deemed material. *United States v. Spinelli*, 551 F.3d 159, 164 (2d Cir. 2008).

*United States v. Garcia*, 562 F.3d 947, 952 n.7 (8th Cir. 2009).

> Undisclosed *Brady/Giglio* information is deemed material so as to justify a retrial only if there is a reasonable probability that, had it been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability of a different result is shown when the government's failure to disclose undermines confidence in the outcome of the trial.

*Id*. at 953 (internal quotations, alterations, and citations omitted).

Here, the district court found that the magistrate judge's credibility determination was inadmissible because it was hearsay. A majority of our sister circuits to consider the issue have held "that judicial findings of facts are hearsay, inadmissible to prove the truth of the findings unless a specific hearsay exception exists." *United States v. Sine*, 493 F.3d 1021, 1036 (9th Cir. 2007) (citing *Herrick v. Garvey*, 298 F.3d 1184, 1191–92 (10th Cir. 2002); *United States v. Jones*, 29 F.3d 1549, 1554 (11th Cir. 1994); *Nipper v. Snipes*, 7 F.3d 415, 417 (4th Cir. 1993)). *But see United States v. Dawson*, 434 F.3d 956, 959 (7th Cir. 2006) (finding that the decision whether to allow witness to be cross-examined about prior judicial determination finding him not credible is confided to discretion of trial judge and that such questioning is not barred by Federal Rule of Evidence 608(b), which proscribes the use of extrinsic evidence to undermine witness's character for truthfulness).

Under the Federal Rules of Evidence, two hearsay exceptions permit the admission of judgments. Neither of these exceptions are applicable in the present case because they

> are limited to (1) prior judgments involving criminal convictions subject to more than one year of imprisonment, Fed. R. Evid. 803(22), and (2) judgments used to provide "proof of matters of personal, family or general history, or boundaries," *id*. 803(23).

*Sine*, 493 F.3d at 1036–37.

In any event, we need not decide whether judicial credibility determinations are inadmissible hearsay because, even assuming that they are admissible, Jeanpierre has failed to show under *Giglio* how the adverse credibility finding was material. Jeanpierre simply cannot show "a reasonable probability that, had it been disclosed to the defense, the result of the proceeding would have been different." *Garcia*, 562 F.3d at 953 (internal quotations, alteration, and citations omitted). The government produced overwhelming evidence of Jeanpierre's guilt at trial. As the government

notes, seven codefendants testified that they spoke to Jeanpierre and later met with him to purchase crack cocaine on numerous occasions between October 2007 and December 2007. Additionally, officers conducting surveillance observed Jeanpierre at these meetings, and numerous intercepted wiretap calls established that Jeanpierre agreed to meet and sell crack cocaine to his codefendants through these calls. Finally, a videotape showed Jeanpierre engaging in drug trafficking activity.

Therefore, we hold that the government did not violate *Brady* or *Giglio* in belatedly disclosing the adverse credibility finding made against Sergeant Snyder in an unrelated case.

B. *Section 851 Enhancement*

Jeanpierre also challenges the district court's application of the sentencing enhancement under § 851. He does not challenge or deny his prior qualifying conviction; instead, he asserts that he was "otherwise not subject to an increased sentence as a matter of law," as provided in § 851(d)(2). Specifically, he maintains that the government abused its discretion in filing the information; in the alternative, he asserts that the government exceeded its authority and the intent of § 851 because Congress did not intend the sentencing enhancement to apply to a low-to-mid-level retailer or "street-level" retailer like Jeanpierre.

"Pursuant to 21 U.S.C. § 851(a)(1), a defendant's sentence may not be increased by reason of his prior convictions unless the government files a written notice of its intent to rely on those convictions prior to entry of the defendant's guilty plea." *United States v. Timely*, 443 F.3d 615, 625–26 (8th Cir. 2006).

> Section 851 is a provision that requires, if the United States Attorney intends to seek enhanced penalties based on the defendant's prior criminal record, that prior to the start of trial or the entry of a plea of guilty, the defendant be given notice of that intent. The fact that it is the

prosecutor who decides whether to give such notice is simply a facet of the above prosecutorial authority . . . .

*United States v. Sanchez*, 517 F.3d 651, 671 (2nd Cir. 2008). But a prosecutor's discretion

> "is, of course, subject to constitutional constraints," *United States v. Batchelder*, 442 U.S. 114, 125, 99 S. Ct. 2198, 60 L. Ed. 2d 755 (1979); the decision whether to prosecute may not be based on "an unjustifiable standard such as race, religion, or other arbitrary classification," *Oyler v. Boles*, 368 U.S. 448, 456, 82 S. Ct. 501, 7 L. Ed. 2d 446 (1962); *see also Yick Wo v. Hopkins*, 118 U.S. 356, 373–74, 6 S. Ct. 1064, 30 L. Ed. 220 (1886). However, because the United States Attorneys are charged with taking care that the laws are faithfully executed, there is a "presumption of regularity support[ing] their prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." [*United States v.*] *Armstrong*, 517 U.S. [456,] 464, 116 S. Ct. 1480 [(1996)] (internal quotation marks omitted); *see also Oyler*, 368 U.S. at 456, 82 S. Ct. 501 (Mere "conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation.").

*Id*.

Here, Jeanpierre first argues that the government abused its discretion in filing the information; however, he has not alleged that the government violated a constitutional restraint in filing the information.

Next, he asks this court to find that the government exceeded the authority and intent of § 851 because Congress did not intend the enhancement to apply to a low-to-mid-level retailer or "street level" offender. In support of this argument, he relies on the statutory notes to the 1986 amendments to 21 U.S.C. § 841, which created the sentencing enhancement at issue. These statutory notes provide:

-12-

Subsec. (b)(1)(A). Pub.L. 99-570, § 1002(2), created an additional new penalty for major manufacturers or distributors of drugs who would be classified by the Drug Enforcement Administration as domestic class I or II violators, and revised the triggering quantities and types of drugs to which this subparagraph applies.

But a review of the text of § 851 reveals no requirement that the defendant be a "major" manufacturer or distributor. "As with any question of statutory interpretation, our analysis begins with the plain language of the statute." *Jimenez v. Quarterman*, 129 S. Ct. 681, 685 (2009). Jeanpierre has not identified any language in the statute or any cases interpreting that statute to support his argument that the government could not charge him under § 851 unless it established that he was a "major" manufacturer or distributor. Therefore, we affirm the district court's application of the enhancement to Jeanpierre.

## III. *Conclusion*

Accordingly, we affirm the district court's judgment.

_____