# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3520

_____

United States of America,

           Appellee,

v.

Gregory Allen Sparkman,

           Appellant.

\*
\*
\*
\*
\*  Appeal from the United States
\*  District Court for the
\*  Eastern District of Missouri.
\*
\*
\*

_____

Submitted: April 10, 2007
Filed: September 6, 2007

_____

Before WOLLMAN, COLLOTON, and SHEPHERD, Circuit Judges.

_____

COLLOTON, Circuit Judge.

A jury convicted Gregory Sparkman of fifteen counts related to a scheme to defraud his business's insurer by burning an office building and two vehicles. On appeal, Sparkman challenges various rulings of the district court[1] during the trial. We affirm.

_____

[1]The Honorable Henry E. Autrey, United States District Judge for the Eastern District of Missouri.

I.

Sparkman and Tom Wilson co-owned West Park Motors, Inc., a pre-owned vehicle dealership in Cape Girardeau, Missouri. In the mid-1990s, Sparkman and Wilson leased a site for the dealership and built an office building there. They insured the value of the office, the office's contents, and their unsold vehicles with Safeco Property and Casualty Insurance Companies.

On the night of December 12, 2000, the West Park Motors office was destroyed by fire. Two unsold vehicles were also driven off the lot and then burned near a rock quarry. Both police and insurance investigators concluded that these fires had been set intentionally but did not identify a perpetrator. When questioned by investigators about his whereabouts at time of the fires, Sparkman claimed that he had been with Scott Smith, an employee of another business that Sparkman owned, at Smith's workshop. Safeco eventually reimbursed West Park Motors for its losses, but Sparkman and Wilson chose not to reopen the business.

In 2003, Smith pled guilty to manufacturing methamphetamine. Shortly after he was sentenced, Smith was interviewed by Special Agent David Diveley of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). According to Diveley's report, Smith told Diveley that on December 12, 2000, Sparkman had asked him to move two unsold vehicles off the West Park Motors lot. While they were moving the vehicles, Sparkman left Smith in a vehicle and walked away in the direction the West Park Motors office carrying a gallon-sized container. He returned ten minutes later. After Smith and Sparkman drove the vehicles away from the dealership, Sparkman set them on fire. They then returned to Smith's workshop, where they turned on a police scanner and listened as the fire department was dispatched to put out the fires.

After the government obtained this information from Smith, a grand jury charged Sparkman with one count of maliciously damaging and destroying property by means of fire, in violation of 18 U.S.C. § 844(i), one count of using fire to commit mail fraud, in violation of 18 U.S.C. § 844(h)(1), and thirteen counts of mail fraud under 18 U.S.C. § 1341. A jury convicted Sparkman of all fifteen counts.

## II.

### A.

Sparkman first argues that the district court violated his right to due process and compulsory process by refusing to compel testimony from James Furr or to continue the trial until Furr could appear. Furr was a long-time friend of Smith's and had manufactured methamphetamine with him. Furr, like Smith, had been interviewed by ATF Special Agent Diveley. According to Diveley's summary of this interview, Furr stated that Smith had told him that he had burned the West Park Motors office himself at Sparkman's request. Sparkman contends that this statement shows that Smith lied when he suggested at trial that Sparkman had burned the office.

Furr was incarcerated at the time of the trial, and Sparkman requested of the government shortly before trial that Furr be produced to testify as a witness for the defense. The United States Marshals Service informed the parties that there was insufficient time to move Furr from prison to the location of the trial. At that point, Sparkman argues, the court should have ordered the Marshals Service to produce Furr more promptly, or continued the trial until Furr could be produced.

We typically review constitutional questions *de novo*, *e.g., United States v. Lopez-Zepeda*, 466 F.3d 651, 655 (8th Cir. 2006), and other circuits have reviewed compulsory process claims under that standard. *E.g.*, *United States v. Bahamonde*, 445 F.3d 1225, 1228 (9th Cir. 2006). On some occasions, however, it appears that our

-3-

court has applied an abuse of discretion standard to such a claim. *United States v. Youngman*, 481 F.3d 1015, 1017 (8th Cir. 2007); *United States v. DeCoteau*, 648 F.2d 1191, 1192 (8th Cir. 1981) (per curiam). We conclude that the district court's decision in this case should be affirmed under either standard of review.

When reviewing compulsory process claims, we are guided by the Supreme Court's opinion in *Taylor v. Illinois*, 484 U.S. 400 (1988). *Taylor* established that a defendant does not have an absolute right to compel the testimony of witnesses in his favor. *Id.* at 414. Rather, the defendant's right to compel testimony must be weighed against "countervailing public interests," including the "integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of unreliable evidence, the interest in the fair and efficient administration of justice, and the potential prejudice to the truth-determining function of the trial process." *Id.* at 414-15. *See also United States v. Nelson-Rodriguez*, 319 F.3d 12, 36 (1st Cir. 2003); *Tyson v. Trigg*, 50 F.3d 436, 444-45 (7th Cir. 1995); *United States v. Johnson*, 970 F.2d 907, 911 (D.C. Cir. 1992); *Horton v. Zant*, 941 F.2d 1449, 1466 (11th Cir. 1991). In particular, we consider, *inter alia*, the timeliness of the defendant's request for the testimony and the importance of the testimony to the defendant's case. *See Taylor*, 484 U.S. at 415 (holding that a court may exclude a witness's testimony if the defendant willfully delays requesting the witness's appearance); *United States v. DeCoteau*, 648 F.2d 1191, 1192 (8th Cir. 1981) (per curiam) (affirming a court's refusal to compel the testimony of witnesses when the defendant's request for the testimony was untimely); *United States v. Turning Bear*, 357 F.3d 730, 733 (8th Cir. 2004) (stating that a defendant claiming violation of the Compulsory Process Clause must show that a witness's testimony is material and favorable).

We think it is significant here that Sparkman did not request Furr's appearance until late in the pre-trial process. His counsel asked the prosecutor to arrange for Furr's appearance no more than seven business days before trial (although the request should have been directed to the United States Marshals Service), and the prosecutor

communicated that request to the Marshals Service five business days before trial. As a result of this short notice, the Marshals Service was unable to transfer Furr from a prison in Colorado to the courtroom in Missouri in time for him to appear during the defense portion of the trial, as it was scheduled. Sparkman's counsel was aware of Furr's imprisonment and thus could have anticipated that transporting him to trial would require significant lead time. The court has a substantial interest in the efficient administration of justice, and we would not lightly conclude that the court was required to continue a trial due to a timing problem that was largely of the defendant's own making.

In this case, the absence of Furr's expected testimony does not undermine our confidence in the verdict. If Furr's testimony is believed, Smith gave two conflicting accounts about the events of December 12. In the version he gave to Agent Diveley and at trial, Smith suggested that Sparkman burned the office while Smith waited in a vehicle nearby. According to the account allegedly given to Furr, Smith said that he personally burned the office on Sparkman's behalf. Either account, however, inculpates Sparkman in the charged offenses. Thus, even if Furr's testimony could show that Smith changed the details of his account, it would also show that Smith was consistent regarding Sparkman's guilt. In view of the modest benefit that Furr's testimony might have offered, we believe the district court correctly ruled that the countervailing public interests in the efficient administration of justice were sufficient reason to deny the motion for a continuance of the trial.

B.

Sparkman also appeals several of the district court's evidentiary rulings. We review these rulings for abuse of discretion. *United States v. Kenyon*, 481 F.3d 1054, 1060 (8th Cir. 2007).

Sparkman argues that the court erred by excluding as hearsay Agent Diveley's report of his interview with Furr concerning statements that Smith allegedly made to Furr. The report contains statements from three speakers. Smith made his alleged statements to Furr, who then repeated them to Diveley, who then summarized them in his report. Diveley's summary was relevant to Smith's credibility only if Furr's account of his conversation with Smith was believed. Furr's statements were thus "offered in evidence to prove the truth of the matter asserted," Fed. R. Evid. 801(c), and the report contains hearsay upon hearsay. For such a report to be admissible, each layer of hearsay must be admissible under the rules of evidence. *See United States v. Turner*, 189 F.3d 712, 719-20 (8th Cir. 1999). Sparkman, however, has not demonstrated that Furr's statements would fall into any exception to the hearsay rules, and the district court thus properly excluded Diveley's report of the interview.

Sparkman also appeals the court's exclusion of Diveley's report of his interview with Smith. Sparkman argues that such reports are admissible as business records under Federal Rule of Evidence 803(6). Other circuits differ on whether police reports may be admitted against the government under Rule 803(6), *compare United States v. Pena-Gutierrez*, 222 F.3d 1080, 1086-87 (9th Cir. 2000) *with United States v. Smith*, 521 F.2d 957, 967-68 n.24 (D.C. Cir. 1975), but we need not resolve that issue here. Even if the report was admissible, its exclusion was harmless. During cross examination and redirect examination, Smith was questioned at length and in detail regarding the inconsistencies between his testimony at trial and the statement that he gave to Diveley. Smith acknowledged that Diveley's summary of their conversation differed from his testimony, and testified that Diveley had made minor errors when summarizing it. Thus, because the relevant portions of Diveley's report were discussed at trial and were not disputed, the written report itself would have been largely cumulative. We are confident that the admission of this report, even if required by the rules of evidence, would not have influenced the verdict substantially. *See Kotteakos v. United States*, 328 U.S. 750, 764-65 (1946).

Sparkman next argues that the court erred by allowing Smith to testify that a couple of months before December 12, 2000, Sparkman told him that he had run an unsold truck into a pond and then reported it stolen to collect insurance on it. When a defendant is charged with insurance fraud, prior instances of insurance fraud may be admitted under Rule 404(b) to show the defendant's intent to commit the charged fraud if the prior fraud is similar to and not too remote in time from the charged fraud. *United States v. Fitterer*, 710 F.2d 1328, 1332 (8th Cir. 1983); *United States v. Calvert*, 523 F.2d 895, 908 (8th Cir. 1975). Here, both the prior offense and the charged offense involved Sparkman's destruction of vehicles to collect insurance and occurred within a few months of each other. Smith's testimony was thus admissible under 404(b) and significantly probative, and the district court did not abuse its discretion by admitting it.

Sparkman contends, however, that even if Smith's "other act" testimony itself was generally admissible, the district court erred in this case because it failed to accompany the evidence with a proper limiting instruction to the jury. The district court gave the following instruction:

> [Y]ou are about to hear evidence that the defendant previously committed an act similar to the ones charged in this case. You may use this evidence to help you decide whether the similarity between the acts previously committed and the ones charged show a common scheme, pattern, or plan between the prior act and the present offenses. Remember, however, that the mere fact that the defendant may have committed a similar act in the past is not evidence that he committed such acts in this case. The defendant is on trial for the crimes charged and for those crimes only. You may not convict a person simply because you believe he may have committed some acts, even bad acts, in the past.

Sparkman claims that this instruction was flawed, and that the district court was required to give model instruction 2.08 of the *Eighth Circuit Manual of Model Jury Instructions* (2003). Sparkman argues that the district court's instruction lacks two essential provisions of the model instruction. First, the model instruction informs that jury that before considering "other act" evidence, it must "unanimously find beyond a reasonable doubt, based on the rest of the evidence introduced, that the defendant carried out the acts involved in the crime charged in the indictment." *Eighth Circuit Manual of Model Jury Instructions* 2.08 (2003). Second, the model instruction states that the "other act" evidence "must be proven by a preponderance of the evidence; that is, you must find that the evidence is more likely true than not true." *Id.*

At trial, Sparkman made only a cursory objection to the limiting instruction. He did not alert the district court to the purported flaws in the instruction given or propose an alternative instruction. Under our precedents, therefore, we review the instruction only for plain error. *See United States v. Looking Cloud*, 419 F.3d 781, 788 (8th Cir. 2005); *United States v. Johnson*, 516 F.2d 209, 213 (8th Cir. 1975). In any event, we conclude that the instruction was not erroneous. The model jury instructions are available for use by the district courts, but they are not binding. *Turner*, 189 F.3d at 722. A district court may properly decide not to use them as long as the instruction given accurately states the law, and we think the court's limiting instruction in this case was proper.

The model instruction does suggest that a jury be instructed to refrain from considering "other acts" evidence unless and until it has determined beyond a reasonable doubt that the defendant has committed the acts charged in the indictment. The evident purpose of such an instruction is to ensure that the jury does not use uncharged acts improperly as propensity evidence to conclude that the defendant committed the charged acts. But the model instruction is not the only permissible means to convey that message to a jury. Here, the jury was told that the "other acts" evidence was admitted to show Sparkman's "scheme, pattern, or plan," and that "the

mere fact that the defendant may have committed a similar act in the past is not evidence that he committed such acts in this case." (T. Tr. vol. 3, at 218). This instruction was adequate to inform the jury of the limited permissible use of the evidence of prior bad acts.

Nor do we think the court was required to give a specific instruction identifying the applicable standard of proof as a preponderance of the evidence. Before evidence is admissible under Rule 404, there must be sufficient evidence for a jury to find by a preponderance of the evidence that the defendant committed the other alleged act. *Huddleston v. United States*, 485 U.S. 681, 685 (1988). So long as the jury understands that it must actually find that the defendant did commit the other act before that evidence may be given weight, we see no reason why the jury must be told specifically to apply a preponderance of the evidence standard. *United States v. Hudson*, 884 F.2d 1016, 1021 (7th Cir. 1989); *United States v. Sliker*, 751 F.2d 477, 500 (2d Cir. 1984). The preponderance standard is the lowest standard of proof available in the law, so there is no likelihood that the defendant could be prejudiced by the application of an unduly lenient standard of proof. The jury was informed that it was the ultimate judge as to all factual issues, and it undoubtedly understood that there was a dispute concerning the credibility of Smith's testimony. We see no reasonable likelihood that the instruction given by the court in this case led the jury to believe that it could consider Sparkman's prior acts without finding that Sparkman actually committed the prior acts. Accordingly, we discern no error.

\*     \*     \*

The judgment of the district court is affirmed.

_____