# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

—————————

No. 08-3177

—————————

United States of America,     *
* 
Appellee,     *
*   Appeal from the United States
v.     *   District Court for the
*   District of Minnesota.
Todd Richard Ladoucer,     *
*
Appellant.     *

—————————

Submitted: June 9, 2009
Filed: July 28, 2009

—————————

Before MURPHY, ARNOLD and GRUENDER, Circuit Judges.

—————————

GRUENDER, Circuit Judge.

A jury found Todd Richard Ladoucer guilty of aiding and abetting the sale of a stolen firearm in violation of 18 U.S.C. § 922(j), aiding and abetting the sale of a firearm to a prohibited person in violation of 18 U.S.C. § 922(d), and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Ladoucer appeals his conviction, arguing that the district court[1] erred by allowing him to proceed pro se and by finding that his Sixth Amendment right to compulsory process was not violated;

—————————

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

abused its discretion by finding that the Government did not commit a *Brady*[2] violation and by denying funding for an expert witness; and plainly erred in instructing the jury.

## I. BACKGROUND

In October 2008, Ladoucer, a multi-convicted felon, helped a juvenile negotiate the sale of two stolen firearms to Craig Hartline, who had a criminal history that included convictions for domestic violence and indecent assault. Hartline operated an independent thrift store. At the same time, he worked as a confidential informant for the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), purchasing illegal narcotics and firearms. Law enforcement agents equipped Hartline's store with video and recording devices to record illicit transactions occurring in the store.

After negotiating the sale of the firearms on behalf of the juvenile, Ladoucer went to Hartline's store on October 25, 2006, to complete the transaction. Hartline gave $600 to Ladoucer in exchange for the two stolen firearms, which Ladoucer had given to Hartline the previous day. Shortly thereafter, an ATF agent retrieved the videotape recording of the transaction.

On July 24, 2007, a federal grand jury returned an indictment charging Ladoucer with aiding and abetting the sale of a stolen firearm, aiding and abetting the sale of a firearm to a prohibited person,[3] and being a felon in possession of a firearm.[4]

---

[2]*Brady v. Maryland*, 373 U.S. 83 (1963).

[3]18 U.S.C. § 922(d)(9) defines "prohibited person" to include a person who has been convicted of a misdemeanor crime of domestic violence.

[4]The grand jury later returned a superseding indictment that added Jeanne Finch and Anteneh Zewde Mekonnen as codefendants. Mekonnen had helped the juvenile steal the firearms. Finch had telephoned Hartline to tell him that the juvenile had the

After a magistrate judge arraigned Ladoucer and appointed counsel for him, the district court scheduled his trial for September 4, 2007.

Ladoucer filed a pro se motion for new counsel on August 17, 2007. On the same day, Ladoucer's court-appointed attorney, Paul Schneck, filed a motion to withdraw. The district court granted Schneck's motion and instructed the Federal Defender's Office to appoint a different attorney to represent Ladoucer. Thomas Plunkett was then appointed to represent Ladoucer, and the district court continued the trial to September 24, 2007. Notwithstanding the fact that he was represented by counsel, Ladoucer began filing a series of pro se motions. The district court wrote to Ladoucer to inform him that he should advise Plunkett of any motions that Ladoucer wanted the court to consider so that Plunkett could make sure the motions were properly before the court.

On September 12, 2007, Ladoucer wrote the district court a letter asking the court to remove Plunkett from his case and allow him to file his own motions. The court held a status conference. After questioning Ladoucer, the court removed Plunkett from the case and granted Ladoucer permission to proceed pro se. Ladoucer represented himself during the jury trial.

At the conclusion of the trial, the jury returned a guilty verdict on all counts. Ladoucer filed two motions for a new trial, after which the district court appointed Paul Engh to represent Ladoucer for all post-trial proceedings, having found that "it is in the interest of justice that counsel be assigned." Engh filed an amended motion for a new trial, arguing that Ladoucer did not willingly waive his right to counsel, that the Government committed a *Brady* violation, that the district court violated Ladoucer's right to compulsory process, and that the jury instructions were

two firearms to sell, and she referred Hartline to Ladoucer, who was dating the juvenile's mother, Gloria Forga. Both Finch and Mekonnen pled guilty.

-3-

insufficient. On September 12, 2008, the parties appeared before the district court for an evidentiary hearing on the amended motion for a new trial and for sentencing, after which the district court denied the motion and sentenced Ladoucer to 96 months' imprisonment. Ladoucer appeals his conviction, raising five issues.

## II.     DISCUSSION

### A.     Waiver of Right to Counsel

Ladoucer first argues that he did not voluntarily and knowingly waive his right to counsel. We review de novo a district court's decision to permit a defendant to proceed pro se. *United States v. Crawford*, 487 F.3d 1101, 1105 (8th Cir. 2007).

The Sixth Amendment provides a criminal defendant with the right to counsel, as well as the right to waive counsel and proceed pro se. *Faretta v. California*, 422 U.S. 806, 807 (1975). "If the defendant waives the right to counsel, the waiver must be voluntary, intelligent, and knowing." *United States v. Armstrong*, 554 F.3d 1159, 1165 (8th Cir.), *cert. denied*, 557 U.S. ---, 77 U.S.L.W. 3678 (2009). "This standard is met if the trial court specifically informed the defendant of the dangers and disadvantages of self-representation, or if the entire record evidences the defendant knew and understood the disadvantages." *Id.* "The court is not required to ensure that the defendant is capable of representing himself as well as a trained and experienced lawyer, only that he understands the risks involved in representing himself and that he has knowingly and intelligently chosen self representation." *United States v. Patterson*, 140 F.3d 767, 774 (8th Cir. 1998).

After reviewing the record, we conclude that Ladoucer's waiver of his right to counsel was voluntary, intelligent, and knowing. The district court sufficiently informed Ladoucer of the dangers and disadvantages of self-representation. The court warned him "that a lot of defendants that try to represent themselves pro se often wish

they hadn't." The court stressed that Ladoucer would be required to follow the rules of procedure, evidence and decorum and that the court would not be on either attorney's side. The court advised Ladoucer more than once that it would be helpful for him at least to have an attorney as an advisor, but Ladoucer rejected that advice. After confirming again that Ladoucer wanted Plunkett removed from his case and to proceed pro se, the district court questioned Ladoucer about his educational and employment history and about his history of filing motions on his own behalf, to confirm that Ladoucer was competent. The district court's inquiry is sufficient to establish a valid waiver. *See Faretta*, 422 U.S. at 835-36 (upholding a waiver where the trial judge told the defendant that the judge thought it was a mistake not to accept the assistance of counsel, warned the defendant that he would be required to follow the rules of trial procedure, and found that the defendant was competent); *Patterson*, 140 F.3d at 775.

Ladoucer asserts that the waiver was not voluntary because the district court forced him to proceed pro se, pointing to statements he made during trial claiming that he did not want to proceed pro se.[5] He submits that the court offered him the Hobson's choice between proceeding pro se or hiring his own attorney.[6] However, the record reveals that the district court was actually offering Ladoucer three options: to represent himself, to hire his own attorney, or to continue with Plunkett as his counsel. "While the 'Hobson's choice' between proceeding to trial with an unprepared counsel or no counsel at all may violate the right to counsel, there is no

_____

[5]For example, Ladoucer stated at trial: "It's not my choice to represent myself . . . I've been forced to represent myself." Ladoucer does not argue in his brief that his statements at trial constituted a revocation of his waiver of his right to counsel. Accordingly, we do not address that issue. *See United States v. Carrillo*, 380 F.3d 411, 413 n.3 (8th Cir. 2004).

[6]After confirming that Ladoucer wanted Plunkett removed from the case, the court stated, "And do you realize that [removing Plunkett] means that if you can't hire an attorney, you're going to have to go it alone?"

constitutional difficulty where the defendant is provided the real alternative of choosing between adequate representation and self-representation." *United States v. Mentzos*, 462 F.3d 830, 839 (8th Cir. 2006) (internal citation omitted). There is nothing in the record suggesting that Plunkett was unprepared or in any other way inadequate as counsel. The district court allowed Ladoucer to explain his dissatisfaction with Plunkett, carefully considered Ladoucer's concerns, and properly declined to find that Ladoucer's dissatisfaction was justified. *See id.* (noting that "the defendant bears the burden of showing justifiable dissatisfaction with appointed counsel to be granted a substitute"). Although Ladoucer argues that he asked to have Schneck reappointed as counsel, an accused does not have an absolute right to counsel of his own choosing. *See United States v. Whitehead*, 487 F.3d 1068, 1071 (8th Cir. 2007). Thus, notwithstanding Ladoucer's statements at trial, the district court did not offer Ladoucer a Hobson's choice, and Ladoucer's decision to proceed pro se "was not rendered involuntary simply because the court required him to choose between qualified counsel and self-representation." *See Mentzos*, 462 F.3d at 839.

Ladoucer also points to his poor performance during the trial to support his contention that the district court erred in allowing him to proceed pro se. However, "a criminal defendant's ability to represent himself has no bearing upon his competence to *choose* self-representation." *Godinez v. Moran*, 509 U.S. 389, 400 (1993). Although a defendant "may conduct his own defense ultimately to his own detriment, his choice [to represent himself] must be honored." *Id.* Thus, while it is clear that Ladoucer performed poorly in representing himself, his performance at trial has no bearing on our conclusion that his waiver of counsel was voluntary, intelligent and knowing.

## B. Compulsory Process

Ladoucer next claims that he was denied his Sixth Amendment right to compulsory process when the district court allowed the trial to continue after Catherine Barr, a witness Ladoucer wanted to testify, failed to appear as requested. Barr had been served with a subpoena in September 2007. However, when the trial

was later moved to November, Barr was not served again. On November 13, 2007, the day before trial was scheduled to begin, Ladoucer filed a motion requesting that the Government subpoena Barr, along with several other witnesses. The Government contacted Barr by telephone and instructed her to appear for trial, but she did not appear.

We typically review constitutional questions de novo, though on some occasions we have reviewed compulsory process claims for abuse of discretion. *United States v. Sparkman*, 500 F.3d 678, 682 (8th Cir. 2007). We conclude that, under either standard of review, the district court's decision to continue the trial without Barr's testimony should be affirmed.

"[A] defendant does not have an absolute right to compel the testimony of witnesses in his favor." *Id.* Instead, we weigh the defendant's right to compel testimony against countervailing public interests, such as "the presentation of reliable evidence and the rejection of unreliable evidence, the interest in the fair and efficient administration of justice, and the potential prejudice to the truth-determining function of the trial process." *Taylor v. Illinois*, 484 U.S. 400, 414-15 (1988). The defendant must show that the excluded testimony "would have been both material and favorable to his defense." *United States v. Turning Bear*, 357 F.3d 730, 733 (8th Cir. 2004). Materiality in this context refers to "a concern that the suppressed evidence might have affected the outcome of the trial." *United States v. Agurs*, 427 U.S. 97, 104 (1976).

Ladoucer has not shown that Barr's testimony would have affected the outcome of the trial. Ladoucer proffered that Barr would testify that she overheard part of a conversation between Ladoucer's girlfriend, Gloria Forga, and codefendant Jeanne Finch, in which Finch discussed her desire to help sell stolen guns to make money. Ladoucer contends that this testimony would support his defense that Finch and Forga were part of a scheme to sell stolen guns and that he had little to do with the transaction that took place in Hartline's store. However, Ladoucer's proffer showed

-7-

that Barr's testimony only concerned Finch's generalized desire to make money by selling guns. Ladoucer's proffer contained no indication that Barr would testify about anything related to Ladoucer, Hartline, the specific firearms at issue in this case, or even when she overheard the conversation. Further, Barr's proposed testimony is entirely consistent with the Government's theory of the case, which was that Ladoucer was one of several individuals, including Finch, involved in the sale of the stolen firearms. In view of the minimal value that Barr's testimony might have offered, the countervailing public interest in the efficient administration of justice was a sufficient reason for the district court to allow the trial to continue without Barr's testimony. *See Sparkman*, 500 F.3d at 683.

Even if we were to assume that the district court erred by proceeding without Barr's testimony, we would conclude that such an error would be "harmless beyond a reasonable doubt" because the Government presented overwhelming evidence of Ladoucer's guilt. *See Anderson v. Groose*, 106 F.3d 242, 246-47 (8th Cir. 1997). Three witnesses provided consistent accounts of Ladoucer's involvement in selling the stolen firearms to a prohibited person. Videotape recordings and cell phone records corroborated each witness's testimony. Weighed against this evidence, Barr's testimony "lacked exculpatory force" and would have had no effect on the jury's verdict. *See id.* at 246.

Ladoucer contends in the alternative that the district court should have admitted a police report reflecting a police officer's interview of Barr that reported the same allegedly overheard conversation between Forga and Finch. We review a district court's evidentiary rulings for abuse of discretion. *Sparkman*, 500 F.3d at 683. The police report contains statements from four speakers: Finch and Forga had a conversation overheard by Barr, who then discussed her memories of the conversation with a police officer, who then summarized Barr's statements in her report. For the police report to be admissible, each layer of hearsay must be admissible under the rules of evidence. *Id.* Ladoucer has not demonstrated that Barr's statements or the

police officer's statements would fall into any exception to the rule against hearsay, and, therefore, the district court properly excluded the police report.

### C.     Alleged *Brady* Violation

Ladoucer next argues that the Government committed a *Brady* violation by failing to provide him with a copy of the transcript of Hartline's testimony in an unrelated state court trial in Minnesota. Ladoucer argues that the transcript contained disclosures about Hartline's past that could have been used to impeach him. We review the denial of a motion for a new trial based on a *Brady* violation for an abuse of discretion. *United States v. Tyndall*, 521 F.3d 877, 881 (8th Cir. 2008), *cert. denied*, 555 U.S. ---, 129 S. Ct. 997 (2009). "The government has an obligation to disclose evidence that is favorable to the accused and material to either guilt or punishment, and this duty extends to impeachment evidence." *United States v. Barraza Cazares*, 465 F.3d 327, 333 (8th Cir. 2006) (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985)). "To show a [*Brady*] violation, the defendant must establish that (1) the evidence was favorable to the defendant, (2) the evidence was material to guilt, and (3) the government suppressed evidence." *Id.*

We conclude that the Government's failure to produce the transcript of Hartline's state court testimony did not violate *Brady* because the transcript was as available to Ladoucer as it was to the Government. *See United States v. Albanese*, 195 F.3d 389, 393 (8th Cir. 1999); *United States v. Jones*, 160 F.3d 473, 479 (8th Cir. 1998) ("There is no *Brady* violation if the defendant[], using reasonable diligence, could have obtained the information [himself]." (internal quotation omitted)). Ladoucer was aware of Hartline's involvement in the Minnesota trial. He questioned Hartline about the results of that trial during cross-examination, and he tried to offer into evidence a newspaper article about the trial. Therefore, because Ladoucer could have obtained a copy of the transcript himself, he cannot show that the Government suppressed evidence. *See United States v. Jones*, 34 F.3d 596, 600 (8th Cir. 1994) ("'[T]he Government cannot be held to have suppressed Brady material' when the

defendant is in 'a position of parity with the government as far as access to this material.'" (quoting *United States v. Johnston*, 543 F.2d 55, 57 (8th Cir. 1976))).

Even if the Government had suppressed the transcript, Ladoucer failed to establish that the transcript was material to his guilt. "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987). Ladoucer repeatedly challenged Hartline's credibility during trial, and the Government informed the jury during its opening statement and direct examination of Hartline that Hartline had prior convictions, that he was a registered sex offender, and that he had not paid taxes since 1983. Thus, evidence from the transcript regarding Hartline's other criminal activities would have been cumulative, and there is no reasonable probability that the transcript would have changed the jury's verdict. *Cf. Jones*, 160 F.3d at 479. Therefore, the district court did not abuse its discretion in denying Ladoucer's motion for a new trial based on an alleged *Brady* violation.

### D. Funds for Expert Witness

Ladoucer argues that the district court should have provided funding for an expert witness to examine the videotape recording of the transaction at Hartline's store to ensure that the recording had not been altered. We review a district court's denial of funding for an expert witness for abuse of discretion. *United States v. Bertling*, 370 F.3d 818, 820 (8th Cir. 2004). "The Criminal Justice Act Revision of 1986 permits a 'financially unable' defendant to request funding for 'investigative, expert, or other services necessary for adequate representation." *United States v. Ross*, 210 F.3d 916, 921 (8th Cir. 2000) (quoting 18 U.S.C. § 3006A(e)). Ladoucer bears the burden of demonstrating that the expert is necessary to an adequate defense and must show "a reasonable probability that the requested expert would aid in his defense and that denial of funding would result in an unfair trial." *See Ross*, 210 F.3d at 921. "The decision to grant or deny funding for an expert witness . . . is committed to the sound

discretion of the district court and will not be reversed absent a showing of prejudice." *Mentzos*, 462 F.3d at 840.

Ladoucer offered no evidence supporting his entirely speculative theory questioning the authenticity and accuracy of the videotape, nor did he specify how an expert would assist his defense. Therefore, he failed to carry his burden of demonstrating that an expert was necessary to his defense. *See Ross*, 210 F.3d at 921. Additionally, Ladoucer failed to show that the denial of funds for an expert resulted in prejudice. The Government presented multiple witnesses who testified to the accuracy of the videotape, and an ATF agent testified about the uncompromised chain of custody of the videotape. Accordingly, we conclude that the district court did not abuse its discretion by denying Ladoucer's request for expert funds.

## E. Jury Instructions

Finally, Ladoucer contends that the district court erred by failing to give certain jury instructions. He claims that the court should have instructed the jury on how to properly evaluate the credibility of Hartline, a paid informant, and Finch, who had been convicted of a felony and had a history of drug abuse. He also argues that the court should have instructed the jury that it may not assume that a codefendant's guilty plea is evidence of Ladoucer's guilt. We typically review jury instructions for abuse of discretion, recognizing that district courts "are entitled to broad discretion in formulating the jury instructions." *United States v. Farish*, 535 F.3d 815, 821 (8th Cir. 2008) (internal quotation omitted). "We review the instructions given as a whole and affirm if they fairly and adequately submitted the issues to the jury." *Id.* However, we review Ladoucer's argument for plain error because he did not submit or request any of his proposed jury instructions at trial. *See* Fed. R. Crim. P. 30(d); Fed. R. Crim. P. 52(b). We may only reverse under plain error review "if the error was so prejudicial as to have affected substantial rights resulting in a miscarriage of justice." *United States v. Urkevich*, 408 F.3d 1031, 1036 (8th Cir. 2005) (internal quotation omitted).

-11-

With respect to Ladoucer's argument that the district court should have instructed the jury to consider the testimony of Hartline and Finch with caution, we find that the district court did not plainly err in failing to give such an instruction sua sponte. We have held that cautionary instructions are not required "where additional evidence is presented that corroborates the [witness's] testimony." *United States v. Worthing*, 434 F.3d 1046, 1050 (8th Cir. 2006). Here, a videotape recording of the transaction and cell phone records corroborated Hartline's and Finch's testimony. Even if there had been no corroborating evidence, Jury Instruction No. 22 reminded the jury that Hartline was a paid informant and that the jury members "may give his testimony such weight as you think it deserves. Whether or not his information or testimony may have been influenced by such payments is for you to determine." This instruction is nearly identical to the one that Ladoucer now suggests the court should have given. Similarly, although the court did not specifically refer to Finch's felony conviction or history of drug abuse, Jury Instruction No. 20 gave the jury detailed instructions on how to evaluate witness credibility. In particular, the instruction provided that the members of the jury should consider "each witness's intelligence, motive to falsify, state of mind, and appearance and manner," as well as the "circumstances under which the witness has testified, and every matter in evidence which tends to show whether a witness . . . is worthy of belief." Given these instructions and the corroborating evidence, the district court committed no error, plain or otherwise, in instructing the jury regarding the credibility of witnesses. *See id.* (rejecting the defendant's challenge to jury instructions where the instructions adequately advised the jury about the factors to consider when assessing credibility and instructed them to give testimony such weight as they thought it deserved).

We also conclude that the district court did not plainly err by failing to give an instruction informing the jury that it may not consider a codefendant's guilty plea as evidence of Ladoucer's guilt. "Although a limiting instruction on use of [a codefendant's] guilty plea should normally be given," the record does not show, and Ladoucer does not contend, that the Government improperly emphasized the

codefendants' guilty pleas before the jury. *See United States v. Rogers*, 939 F.2d 591, 595 (8th Cir. 1991) (per curiam) (finding no plain error in failure to give a limiting instruction where the defendant did not request a limiting instruction and the Government did not highlight the codefendant's guilty plea before the jury); *United States v. Wiesle*, 542 F.2d 61, 63 (8th Cir. 1976) (per curiam) (upholding conviction where the defendant failed to request a limiting instruction, the Government did not emphasize the guilty plea, and there was strong evidence of the defendant's guilt). In light of the overwhelming evidence of Ladoucer's guilt, "the failure to give a [limiting] instruction was not such plain error as to require reversal." *See Wiesle*, 542 F.2d at 63; *United States v. Roth*, 736 F.2d 1222, 1227 (8th Cir. 1984).

## III.    CONCLUSION

For the foregoing reasons, we affirm Ladoucer's conviction.

_____