BYE, Circuit Judge,
dissenting.
I dissent as I do not believe the district court committed clear error when it found the defendants had met their burden of showing the value of the mineral interest at stake in this case more likely than not *1021 exceeds $75,000. Once the Userys challenged the amount in controversy, the defendants, as the party seeking to invoke federal jurisdiction, were required to prove the amount in controversy by a preponderance of the evidence. Drobnak v. Andersen Corp., 561 F.3d 778, 786 (8th Cir.2009). The preponderance of the evidence standard is the lowest standard of proof available in the law. United States v. Sparkman, 500 F.3d 678, 685 (8th Cir.2007). As my colleagues have noted, we review the district court’s factual determination regarding the amount in controversy for clear error. Osborn v. United States, 918 F.2d 724, 730 (8th Cir.1990). We may reverse only if we have a definite and firm conviction that the district court was mistaken. Am. Boat Co., Inc. v. Unknown Sunken Barge, 567 F.3d 348, 352 (8th Cir.2009).
Federal courts take into account the value of the underlying minerals in calculating the amount in controversy for jurisdictional purposes when a mineral interest is at stake. See Northup Props., Inc. v. Chesapeake Appalachia, L.L.C., 567 F.3d 767, 770-71 (6th Cir.2009) (citing Ladner v. Tauren Exploration, Inc., No. 08-1725, 2009 WL 196021, at *2-3, (W.D.La. Jan. 27, 2009)). Mineral interests are notoriously difficult to value, as the Supreme Court itself noted in ASARCO, Inc. v. Radish, 490 U.S. 605, 628 n. 3, 109 S.Ct. 2037, 104 L.Ed.2d 696 (1989). The court in Northup Propetiies, valuing a mineral lease, relied on the affidavit of a petroleum engineer estimating “(1) the ‘future cash flows’ from the natural gas well at $168,147; (2) the discounted present value of the well as between $106,874 and $131,426; (3) the value of the remaining undeveloped acreage of the entire leasehold estate at $476,700; and (4) the initial cost of drilling the well as exceeding $75,000.” Northup Properties, 567 F.3d at 769. The Ladner court, in valuing the extinguishment of another lease, relied on two affidavits, one setting forth the value of the leasehold interest itself at between $123,906.25 and $743,437.50 and another which estimated the net present value of the natural gas that could be produced from the leased acreage at $216,420. The court found $175,841.25, or 13/16 of the projected production value was part of the amount in controversy because the landowner retained the right to 3/16 of the production under the lease.
The defendants in the instant case presented the affidavit of John Rathmann, Anadarko’s Senior Staff Reservoir Engineer, a petroleum engineer with over thirty years of experience. Rathmann indicated his job responsibilities include valuing Anadarko’s acreage holdings in the Fayetteville Shale (the location of the Usery property). He stated the pre-production consideration for Hailwood’s mineral lease alone was $42,000. I note the amount in controversy here is the value of the entire mineral interest, of which Hailwood’s leasehold interest is only a part. Rathmann also attested that Anadarko retained the right under the lease to 3/16 of the proceeds from the sale of gas produced on the property. Rathmann cited the existence of several producing wells in the immediate area, including one well outside the Fayetteville Shale located only three miles to the south. Using that well as a frame of reference, Rathmann estimated the total value of the royalties alone on gas extracted from the property would be “in the high six figure range” over the life of the well. Rathmann also estimated production on the Usery property based on a horizontal well two miles west of the property, and concluded the value of the royalty interest alone over the productive life of such a well would be in excess of $75,000. It was not necessary for Rathmann to choose a “likely” well, since both of his comparisons resulted in a value in excess of the jurisdictional minimum. I am similarly confused by the majority’s statement *1022 that Rathmann’s affidavit was somehow deficient because “the assertion that income would exceed $75,000 cannot be taken to mean that it would be more than $75,000.01[.]” A value of $75,000.01, without more, exceeds $75,000, which is all that 28 U.S.C. § 1332(a) requires.
The record also contains the affidavit of William H. Marble, Vice President of Engineering and Land for Hailwood Energy, L.P., another engineer with more than thirty years of experience in oil and gas exploration and production. Marble estimates that Hailwood, as holder of the lease on the mineral interest, stands to lose more than $400,000 in future revenue should the lease be terminated.
In contrast, the Userys merely pleaded the value of the mineral interest is less than $75,000. They contend this was equivalent to a landowner testifying as to a value of his land, which is admissible evidence in the state of Arkansas. However, they submitted no affidavits or sworn testimony on the value of the mineral rights in their land. Although they state the pleading was drafted “after consulting with a licensed appraiser familiar with the value of mineral rights in the area,” the Userys provide no testimony or evidence regarding such an appraiser or any appraisal which might have been made on their property.
The evidence before the district court at the time it determined the amount in controversy for the purpose of federal jurisdiction was a blank assertion from the Userys that the mineral interest attached to their land was worth less than $75,000, to be weighed against affidavits from petroleum engineers setting forth a direct lease compensation of $42,000, projected royalties of more than $75,000 to “high six figures” depending on the type of well, and projected revenues under the lease from the minerals themselves of $400,000. The mineral interest to be adjudicated in this case encompasses all of those values. While it is true no evidence was submitted as to the costs of production on a well, the lease compensation plus the projected royalties alone, neither of which would be affected by the costs of production, are more than enough to satisfy the jurisdictional requirement.
There may be a case where failure to discount for present value or failure to account for costs of production might be fatal to a finding that the amount in controversy exceeds the jurisdictional minimum. In the instant case, where there is unrebutted evidence that the outcome will determine the fate of half a million dollars worth of natural gas on the property, I cannot say the district court clearly erred in finding it more likely than not that the amount in controversy exceeded $75,000.
I therefore respectfully dissent.