**UNITED STATES of America,
Plaintiff,**

v.

**Yoirlan Tome ROJAS, Defendant.**

**No. CR14–04015–MWB.**

United States District Court,
N.D. Iowa,
Western Division.

Signed Aug. 12, 2014.

Jamie D. Bowers, U.S. Attorney's Office, Sioux City, IA, for Plaintiff.

Bradley Ryan Hansen, Federal Public Defender's Office, Sioux City, IA, for Defendant.

### ORDER ON MOTION TO COMPEL

LEONARD T. STRAND, United States Magistrate Judge.

## I. INTRODUCTION

Defendant Yoirlan Tome Rojas is charged by a superseding indictment (Doc. No. 29) with two counts of using a counterfeit access device, one count of possession of fifteen or more counterfeit access devices, one count of money laundering and two counts of aggravated identity theft. He has filed a motion (Doc. No. 60) to compel through which he seeks an order directing plaintiff (the Government) to (a) reveal the identity of a confidential informant (CI) in an ongoing investigation in Texas, (b) turn over the photograph used by the CI to identify Tome Rojas and (c) make available the basis for a search warrant issued in Texas concerning electronic evidence. The Government has filed a resistance (Doc. No. 64).

I held an evidentiary hearing on August 5, 2014. Assistant United States Attorney Jaime Bowers appeared on behalf of the Government. Tome Rojas appeared personally and with his attorney, Christopher Roth. Tome Rojas proffered information through counsel but called no witnesses. The Government offered the testimony of Detective Brian Flikeid of the Storm Lake, Iowa, Police Department. No exhibits were offered into evidence.

## II. RELEVANT FACTS

The Storm Lake Police Department was contacted by two out-of-state victims who reported their credit cards were fraudulently charged at a Wal–Mart store in Storm Lake on September 13, 2013, and November 6, 2013. The victims still had possession of their genuine credit cards. However, their account numbers were utilized to make purchases with manufactured counterfeit cards. Officers contacted the store's loss prevention manager and obtained surveillance videos and purchase information for the transactions at issue. According to Flikeid, the video evidence shows Tome Rojas using fraudulent credit cards linked to the victims' accounts.

Storm Lake police officers obtained and executed a search warrant for Tome Rojas's home, person and a storage locker in his apartment building. The officers found 244 manufactured counterfeit credit cards. The case was then referred to the United States Secret Service, which assigned Agent Michael Hawkins to the investigation. On February 20, 2014, the Grand Jury returned the original federal indictment (Doc. No. 1) against Tome Rojas and an arrest warrant was issued. Federal agents arrested Tome Rojas on February 27, 2014.

During the course of his investigation, Hawkins was contacted by Secret Service agents in Texas who were investigating a credit card fraud case. Those agents informed Hawkins that Tome Rojas had come to their attention, as a CI had identified him via a photograph as being a member of a credit card fraud ring. Based on the CI's reports and their own investigation, the agents in Texas obtained and executed a search warrant for an email address and other electronic evidence purportedly connected to Tome Rojas. That warrant allegedly generated evidence of an extensive credit card fraud ring, including 16–digit credit card account numbers, victim information, information about manufacturing counterfeit devices and suspect information. According to the Government, however, none of the evidence obtained through the Texas investigation forms the basis for any counts of the superseding indictment against Tome Rojas in this case. Moreover, during the hearing counsel for the Government represented that the agents in Texas are familiar with

the contents of the Texas investigative file, are aware of the Government's obligation to disclose exculpatory materials and have not made counsel for the Government aware of any such exculpatory materials.

## III. DISCUSSION

### A. Applicable Standards

 Discovery in criminal cases is governed by Federal Rule of Criminal Procedure 16, as supplemented by the stipulated discovery order commonly utilized in this district and agreed to by both parties here. Doc. No. 11 at 14–16. Tome Rojas does not cite to any particular provision of either Rule 16 or the stipulated discovery order in support of his motion. Instead, he invokes the Due Process Clause, noting that criminal prosecutions must comport with "prevailing notions of fundamental fairness." Doc. No. 60–1 at 3. Under this constitutional standard, it is well-established that the Government must disclose evidence favorable to the defendant when that evidence is material to either guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Ellefsen*, 655 F.3d 769, 778 (8th Cir.2011) (quoting *United States v. Ladoucer*, 573 F.3d 628, 636 (8th Cir.2009)) (in turn quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 57, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987)). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

 Where, as here, a defendant seeks disclosure of a confidential informant, "the defendant bears the burden of demonstrating a need for disclosure." *United States v. Wright*, 145 F.3d 972, 975 (8th Cir.1998). The court must weigh "the defendant's right to information against the government's privilege to withhold the identity of its confidential informants." *United States v. Lapsley*, 334 F.3d 762, 763–64 (8th Cir.2003) (quoting *United States v. Fairchild*, 122 F.3d 605, 609 (8th Cir.1997)) (in turn quoting *United States v. Harrington*, 951 F.2d 876, 877 (8th Cir. 1991)). "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Roviaro v. United States*, 353 U.S. 53, 60–61, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). However, disclosure should not be ordered unless the informant's identity is deemed "vital to a fair trial." *Wright*, 145 F.3d at 975 (quoting *United States v. Bourbon*, 819 F.2d 856, 860 (8th Cir.1987)). Thus, for example, "disclosure is typically not required when the informant 'merely convey[s] information to the government but neither witness[es] nor participat[es] in the offense.'" *Lapsley*, 334 F.3d at 764 (quoting *United States v. Chevre*, 146 F.3d 622, 623 (8th Cir.1998)) (in turn quoting *Harrington*, 951 F.2d at 878).

### B. Analysis

#### 1. Is Defendant entitled to the identity of the CI?

 Tome Rojas argues he is entitled to discover the identity of the Texas CI because that evidence is relevant to the case against him here, may help him prepare a defense and could lead to the discovery of exculpatory evidence. However, there is no evidence that the CI witnessed or participated in the alleged offenses for which Tome Rojas has been charged in this case. The CI did not provide information to the Storm Lake Police Department or to Haw-

kins regarding those offenses. Instead, the CI is alleged to have provided information to agents in Texas regarding separate, generally related, offenses. Those possible crimes are not at issue in this case and are sufficiently separate. The charges pending here are based on evidence obtained independently of, and unrelated to, the Texas investigation and the CI. That evidence includes victim reports made to the Storm Lake Police Department, video evidence and other information obtained from the Wal–Mart Store in Storm Lake, and evidence gathered pursuant to an Iowa search warrant. The Government indicates that it has no intention, and no need, to offer evidence arising from the Texas investigation or the CI in support of any of the six counts pending against Tome Rojas here.

Based on these facts, Tome Rojas has not established that the Government's refusal to disclose the CI's identity is a *Brady* violation. Nor has Tome Rojas shown that such disclosure is "vital to a fair trial." The CI's identity does not have a reasonable probability of affecting the result of the proceedings with regard to any of the charges pending in this case. Nor would confidence in the outcome of these proceedings be undermined by non-disclosure of the CI's identity. Instead, disclosure of the CI's identity would serve only to jeopardize a separate, ongoing investigation while possibly putting the CI at risk. Tome Rojas's motion will be denied on this issue.

### 2. Is Defendant Entitled To A Copy Of The Photograph From Which The CI Allegedly Identified Him?

■ Tome Rojas also requests disclosure of the photograph the CI allegedly used to identify him. He argues that the photograph is material to this case because it could contain exculpatory evidence, may

assist him in preparing for trial and prepare a defense. These arguments are purely speculative. He has not shown that the photograph is likely to be favorable to him, let alone that it would be material to his defense. As noted above, the photograph relates to a separate, ongoing investigation in Texas. It has no connection to the charges in Iowa. No evidence supporting the charges in this case was derived from the CI's alleged photo identification of Tome Rojas. The offenses charged in the superseding indictment are based on alleged activities that took place in Iowa, victim reports, information obtained from the Storm Lake Wal–Mart Store and evidence gathered pursuant to an Iowa search warrant. The CI's alleged photo identification was not used to identify Tome Rojas as the individual in the Wal–Mart video. Rather, it appears the photograph was used by the agents in Texas to connect Tome Rojas to an ongoing investigation in Texas. A general connection to an ongoing investigation in another jurisdiction does not raise the photograph to the level of materiality necessary to require disclosure in this case. Tome Rojas's motion will be denied on this issue.

### 3. Is Defendant Entitled To Discover The Basis Of The Texas Search Warrant?

■ Tome Rojas also seeks to compel disclosure of all evidence and information submitted in support of the application for a search warrant in Texas. He again argues that the supporting materials may contain exculpatory evidence, may help him prepare for trial and may assist his defense against the charges contained in the superseding indictment. Again, he has not met his burden of establishing that disclosure is required. The Texas search warrant was not used to gather any evidence the Government relies upon in support of the charges against Tome Rojas

here. Nothing apart from sheer speculation suggests that the Texas search warrant application might contain information that is favorable to Tome Rojas and material to his defense.

Having reached this conclusion, I nonetheless have some concern that the Government has not fully explored the possibility that the investigative file amassed by the Texas secret service agents might contain materials that are exculpatory as to Tome Rojas. During the hearing, counsel for the Government acknowledged that he has not personally reviewed the Texas file. Nor does it appear that he has made a direct inquiry to the agents in Texas as to whether that file might contain exculpatory materials. While the possibility seems remote, I will require that such an inquiry be made to ensure the protection of Tome Rojas's due process rights. Tome Rojas's motion on this issue will be denied at this time, but that denial will be subject to this requirement.

## IV. CONCLUSION

For the foregoing reasons, Tome Rojas's motion (Doc. No. 60) to compel is **denied.** However, counsel for the Government shall make a direct inquiry of the appropriate Secret Service agents in Texas to determine whether their investigative file contains information that must be disclosed to Tome Rojas pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Such inquiry shall be made no later than *August 18, 2014.* Should the inquiry result in the discovery of *Brady* materials, those materials shall be disclosed to Tome Rojas immediately.

**IT IS SO ORDERED.**