EMC NATIONAL LIFE COMPANY,
Plaintiff,

v.

EMPLOYEE BENEFITS SYSTEMS,
INC., and William B. Loweth,
Defendants

Employee Benefits Systems, Inc.,
Counterclaim Plaintiff

v.

EMC National Life Company,
Counterclaim Defendant.

No. 4:10–cv–00143–JEG.

United States District Court,
S.D. Iowa,
Central Division.

Sept. 26, 2011.

Bradley M. Beaman, John C. Cortesio, Jr., Denny M. Dennis, Todd A. Strother, Bradshaw Fowler Proctor & Fairgrave Des Moines, IA, for Counter Defendant/Plaintiff, EMC National Life Company.

Gregory R. Brown, Joseph Graham Gamble, Duncan Green Brown Langeness & Eckley PC, Arnold Anderson (Andy) Vickery, Perdue Kidd & Vickery, Des Moines, IA, for Counter Claimant/Defendant, Employee Benefits Systems, Inc.

Thomas W. Foley, Babich Goldman, P.C., Des Moines, IA, for Defendant, William B. Loweth.

### ORDER

JAMES E. GRITZNER, District Judge.

This matter comes before the Court on a Motion for Determination of a Law Point (ECF No. 60) filed by Defendant/Counterclaim Plaintiff Employee Benefits Systems, Inc. (EBS). Plaintiff/Counterclaim Defendant EMC National Life Company (EMCNL)[1] does not resist the determination of the law point at issue in EBS's motion but argues for a contrary result. The Court held a hearing on the motion on August 2, 2011. Todd Strother represented EMCNL, and Arnold Anderson Vickery represented EBS. For the reasons stated below, the Court does not find the matter fully submitted and ready for ruling. However, to illustrate the remaining issue, the Court finds it appropriate to provide

---

1. EMCNL is a successor entity to National Traveler's Life Insurance Company, which entered into some of the agreements at issue in this case. "EMCNL" refers to both entities without distinction.

some discussion both of the factual background and the legal issues.

## I. FACTUAL AND PROCEDURAL BACKGROUND

EBS works with insurance agents, providers, and underwriters to package various types of coverage to sell to union workers. Defendant William B. Loweth (Loweth) managed EBS full time and was paid a salary, bonus, and benefits. Beginning in 1999, Loweth entered into a series of agreements with EMCNL, purporting to outline and govern the relationship between EMCNL, EBS, and Loweth. EBS adopted resolutions to enter into an agent contract with EMCNL and that Loweth, as President of EBS, was authorized to enter into contracts with EMCNL.

Loweth entered into an "Agent's Deferred Income Agreement" (the Deferred Income Agreement) that identified as EMCNL and EBS/Loweth as the contracting parties and identified Loweth as the beneficiary of the agreement and as an employee of EBS/Loweth. Under the Deferred Income Agreement, EMCNL made contributions to Loweth's retirement account. Between 2001 and 2007, under the Deferred Income Agreement, EMCNL yearly transferred money into an account for the personal benefit of Loweth, totaling $760,814.40. Loweth also entered into a "Supplemental Bonus Plan Agreement" (the Bonus Agreements) with EMCNL. Under the Bonus Agreements, in 2006 and 2007, EMCNL paid Loweth $52,241.20 in bonuses based on his sales.

In 2009, after meeting with EBS about the bonuses and retirement account funds, Loweth paid EMCNL $144,000.00 in cash and assigned EMCNL all of the monies in his retirement account. Pursuant to Loweth's assignment, EMCNL issued a check to EBS for $572,019.17.

EBS and EMCNL both filed lawsuits in different U.S. District Courts. EBS's lawsuit included a claim against EMCNL and Loweth for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968. After the lawsuits were consolidated before this Court, EMCNL moved to dismiss EBS's RICO claim.

On March 15, 2011, in response to EMCNL's motions to dismiss, the Court entered an order that addressed the issue of damages in its RICO standing discussion as follows:

> EMCNL next asserts that any damages to EBS have been remedied or mitigated, thus obviating any injury to EBS's business or property. EBS counters that it has only been partially reimbursed for the allegedly improper diversion of funds.
>
> The counterclaim states that EMCNL diverted $614,681.13 into a deferred compensation fund and additionally made $146,133.67 worth of matching contributions to that fund. The counterclaim also states that Loweth has paid EBS $144,000.00 and assigned EBS the monies held in the deferred compensation account, from which EMCNL has paid EBS $572,000.00. EMCNL asserts that the matching contributions should not be part of the damages calculation; consequently, the cash reimbursement amounts that EBS has received (collectively, $716,000.00) are greater than the total amount of the claimed injury ($614,681.13, or $666,922.42 when including bonuses paid to Loweth), and therefore no injury remains. EBS contends that the matching contributions were part of the diverted funds and hence it has only received partial restitution.
>
> Because the counterclaim asserts that the payments were wrongfully diverted from EBS to Loweth's deferred compensation account, EBS suffered a loss. *See Gallagher [v. Magner]*, 619 F.3d

[823,] 841–42 [8th Cir.2010]. However, it is difficult to determine from the counterclaim the amount of the actual loss to EBS since part of the diverted funds were matching contributions to a personal retirement account, and EBS has received some reimbursement from Loweth and EMCNL.

. . .

[A]ccepting as true EBS's factual allegations that EMCNL knew that funds paid into Loweth's retirement account were really EBS funds, the diverted funds totaled $760,814.40 and EBS has only received $716,000.00 of those funds. *See [Brown v. Medtronic, Inc.,* 628 F.3d 451, 461 (8th Cir.2010)]. Thus, EBS has asserted facts showing that it has plausibly suffered a concrete financial loss sufficient to confer statutory RICO standing on EBS at this point in the litigation. *See Bowman,* 985 F.2d at 384.

March 15, 2011, Order, 9–10, ECF No. 46. Central to the current matter, therefore, is the Court's prior determination *only* that EBS has stated a claim for relief that survives a motion to dismiss. The question remains unresolved whether EBS will be able to ultimately prove any amount of damages. The parties have not stipulated that there are damages in some amount. Thus, the Court is being asked to make a determination that may never be required.

In the instant motion for determination of a law point, EBS requests that before the parties commit significant resources and time to discovery, the Court rule on the following issue: "In calculating damages under RICO, would [EMCNL] get a credit for the monies that EBS recouped from [Loweth] and EMCNL *before* or *after* trebling?" EBS's Mot. for Determination of a Law Point ¶¶ 1, 3, ECF No. 60.

## II. DISCUSSION

 The Court is asked to decide whether, in this case, civil RICO treble damages would be calculated on the total amount of funds allegedly diverted by Loweth and EMCNL from EBS or on the amount of funds allegedly owed to EBS after accounting for the monies Loweth and EMCNL paid before the filing of this lawsuit. The interpretation of a statute is a question of law for the Court. *See Kaufmann v. Siemens Med. Solutions USA, Inc.,* 638 F.3d 840, 846 (8th Cir.2011). This is an issue of first impression in this Circuit. Even more importantly, as it addresses the Court's jurisdiction, it would seem to raise issues of ripeness and the specter of an advisory opinion that the Court would be required to reject. *U.S. Const. art. III, § 2, cl. 1;* and *see, e.g., Pub. Water Supply Dist. No. 8 of Clay Cnty. v. City of Kearney, Mo.,* 401 F.3d 930, 932 (8th Cir.2005).

Title 18 United States Code Section 1964(c) of the RICO Act provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 may sue therefore in any appropriate United States district court and shall recover threefold the *damages he sustains* . . . ." (emphasis added).

 The question before the Court turns on the meaning and breadth of "the damages he sustains" in § 1964(c). "As with any question of statutory interpretation, [the Court's] analysis begins with the plain language of the statute." *United States v. Jeanpierre,* 636 F.3d 416, 425 (8th Cir.2011) (quoting *Jimenez v. Quarterman,* 555 U.S. 113, 118, 129 S.Ct. 681, 172 L.Ed.2d 475 (2009)). RICO does not define damages; however, damages is a commonly understood term of art meaning the monetary relief awarded in the judicial system. *See Black's Law Dictionary* 445 (9th ed. 2009) (defining damages as "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury"); *Webster's Third New Interna-*

*tional Dictionary* 571 (Unabridged 2002) (defining damages as "the estimated reparation in money for detriment or injury sustained: compensation or satisfaction imposed by law for a wrong or injury caused by a violation of a legal right"); cf. *Morissette v. United States,* 342 U.S. 246, 263, 72 S.Ct. 240, 96 L.Ed. 288 (1952) ("[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed."); *Cont'l Ins. Cos. v. Ne. Pharm. & Chem. Co., Inc.,* 842 F.2d 977, 985 (8th Cir.1988) (en banc) (noting that outside the insurance context "damages" can include both legal and equitable monetary relief). In the first clause of § 1964(c), Congress extends to individuals injured due to a violation of the criminal RICO statute the ability to *allege* civil RICO violations in federal court. However, because "damages" is modified by "he sustains," Congress' authorization for treble damages is dependent on the establishment of a defendant's RICO liability first, and the trebling is based on the damages caused by the injury proven for liability. In other words, the statute authorizes courts to treble actual damages,[2] which are defined as "[a]n amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses." [3] *Black's Law Dictionary* 445 (9th ed. 2009).

██ Determining actual damages for an injury caused by a RICO violation does take into consideration restitution and mit-

---

2. *See* the Court's March 15, 2011, Order, ECF 46, at 8–9.

3. *Black's Law Dictionary* 449 (9th ed. 2009) defines treble damages as "[d]amages that, by

igation. *See Bieter v. Blomquist,* 987 F.2d 1319, 1329 (8th Cir.1993) ("Other courts have recognized that civil RICO is 'a statutory tort remedy-simply one with particularly drastic remedies.' It follows then, that limitations on damages suggested by tort law would also apply to civil RICO." (citing *Brandenburg v. Seidel,* 859 F.2d 1179, 1189 (4th Cir.1988), *overruled on other grounds by Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996))). In *Bieter,* the court acknowledged that the plaintiff was injured and concluded that defendant's argument that the plaintiff had no cognizable injury under RICO should be made to a jury under the rubric that the plaintiff failed to mitigate its damages. *Id.* The court held that a jury would be expected to consider the plaintiff's failure to mitigate. *Id.* Likewise, here the Court has concluded that EBS has asserted facts sufficient to maintain its RICO claim to this point in the litigation. However, like in *Bieter,* at this point in the litigation the Court is unable to determine any amount of actual damages.

EBS argues, however, that the weight of authority coupled with the rationale and policy behind RICO militate in favor of a holding that restitution and mitigation are not factored into the amount used to calculate treble damages.

EBS relies mainly on *Commonwealth of Pennsylvania v. Cianfrani,* 600 F.Supp. 1364, 1365 (E.D.Pa.1985), in which a member of the state senate placed two people on the commonwealth's payroll, although they never did any work for the commonwealth. After the senator pled guilty to charges of mail fraud and RICO violations,

---

statute, are three times the amount of *actual damages* that the fact-finder determines is owed" (emphasis added).

the commonwealth received an assignment of the senator's retirement funds and recouped the total amount of payments made to the "ghost" employees. *Id.* at 1366. The commonwealth then filed a civil RICO action, seeking only RICO treble damages. *Id.* at 1365. The senator contended that the commonwealth was not entitled to RICO treble damages because it "had set off the amount by which it was damaged before it instituted this suit." *Id.* at 1367. The *Cianfrani* court rejected the senator's argument, stating the senator's "interpretation would enable any person guilty of violating § 1962 to avoid imposition of treble damages by the simple device of making restitution before the injured person brings suit." *Id.* "To adopt such a restrictive reading of § 1964(c) would contravene Congress' mandate that the RICO statute be construed liberally to effectuate its remedial purposes." *Id.* The court found analogous precedent in antitrust law that would not allow courts to "deduct from the amount of an unlawful overcharge any part of the injury which the victim had recouped." *Id.* Thus, *Cianfrani* stands for the proposition that a person adjudged guilty of a RICO violation should not be able to avoid civil RICO treble damages even if the victim has recouped its losses. *Cianfrani* is distinguishable, however, in that the parties in this case seek to know if RICO treble damages are available when there has been no finding or admission of guilt.[4] Moreover, the holding in *Cianfrani* is contrary to the direction in *Bieter* that recouped losses should be considered in RICO cases.

EBS also relies on *Flintkote Co. v. Lysfjord*, 246 F.2d 368, 397–98 (9th Cir.1957), in which the court held that an antitrust conspirator who had been found guilty could not deduct $20,000.00 in restitution paid by a co-conspirator from the jury's $150,000.00 actual damages award for purposes of calculating treble damages. The *Flintkote* court's conclusion was based on "firmly rooted principles of joint liability and the manifest objectives of antitrust laws in general and the treble damage provision in particular." *Id.* at 397. *Flintkote* addresses a distinct situation from that at issue here because in this case there is as of yet no liability, no fixed jury award for actual damages, and no joint and several liability for joint tortfeasors. The Court must again revisit the statutory authorization that applies treble damages at the point liability and some amount of damages have been determined to be "by him sustained." 15 U.S.C. § 15.

Inherent in the cases on which EBS relies that considered joint tortfeasor settlements or setoffs is the existence of some amount of actual damages. In *Morley v. Cohen*, 888 F.2d 1006, 1012–13 (4th Cir. 1989), the court determined that treble damages should be calculated on the amount the jury found in damages. *Id.* at 1013 (citing *In re Nat'l Mortg. Equity Corp. Mortg. Pool*, 636 F.Supp. 1138, 1151–52 (C.D.Cal.1986) (holding that settlement payments are credited against actual damages after trebling); *Cianfrani*, 600 F.Supp. at 1368). Likewise, in *Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1310 (7th Cir.1987), wherein a defendant tried to return propane cylinders after trial as a set-off, the court held that such a set-off should only be deducted from the jury's actual damages award after trebling.

## III. CONCLUSION

The Court certainly recognizes the practical utility of the determination the parties seek at this stage in the litigation.

---

4. In addition, when confronted by EBS, Loweth assigned the money to EBS and EMCNL paid EBS, whereas in *Cianfrani* it appears that the commonwealth had no cooperation from the perpetrator in recouping its losses. *Id.* at 1366–67.

That practical benefit seems to collide, however, with the Court's jurisdictional limitations. The Court has attempted to work through the issue but finds the process risks moving from a judicial role to an advocacy role, which the Court must avoid. The Court will not proceed to make the determination sought by the parties absent clear and convincing authority establishing that the Court has jurisdiction to answer the treble damages question *before* a RICO liability finding has been conceded or found by the Court. Accordingly, the Court directs the parties to file supplemental briefs solely on the issue of whether the current motion is ripe for consideration or would necessarily involve an advisory opinion of the Court. Simultaneous briefs shall be filed on October 24, 2011.

**IT IS SO ORDERED.**